127 F.3d 1077
 19 ITRD 1673
 The TORRINGTON CO., Plaintiff-Appellant,
and
Federal-Mogul Corporation, Plaintiff,
v.
The UNITED STATES, Defendant-Appellee,
and
SKF USA, Inc., SKF France, S.A., SKF GmbH, SKF Industrie,
S.p.A., SKF (U.K.) Limited, SKF Sverige AB,
Defendants-Appellees,
and
Koyo Seiko Co., Ltd., Koyo Corporation of U.S.A., Defendants-Appellees,
and
NSK Ltd., NSK Corporation, Defendants-Appellees,
and
NTN Bearing Corporation of America, American NTN Bearing
Manufacturing Corporation, NTN Corporation, NTN
Kugellagerfabrik (Deutschland) GmbH,
Defendants-Appellees,
and
NMB Thai Ltd, Pelmec Industries Ltd., NMB Corporation, NMB
Singapore Ltd., Defendants-Appellees,
and
FAG (U.K.) Limited, Barden Corporation (U.K.) Limited,FAG
Bearings Corporation, The Barden Corporation, FAG
Kugelfischer Georg Schaefer KGaA, FAG
Cuscinetti S.p.A., Defendants-Appellees,
and
Ina Walzlager Schaeffler KG, Ina Bearing Company, Inc.,
Defendants-Appellees,
and
GMN Georg Muller Nurnberg AG, Defendant-Appellee.
and
RHP Bearings Inc., RHP Bearings Of U.S.A., Peer Bearing
Company, Defendants.
 No. 97-1181.
 United States Court of Appeals,
Federal Circuit.
 Oct. 15, 1997.
 
 James R. Cannon, Jr., Stewart and Stewart, Washington, DC, argued for plaintiff-appellant. On the brief were Terence P. Stewart and Wesley K. Caine. Of counsel were Lane S. Hurewitz and Geert M. DePrest.
 Lucius B. Lau, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, DC, argued for defendant-appellee The United States. On the brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, and Velta A. Melnbrencis, Assistant Director. Of counsel on the brief were Stephen J. Powell, Chief Counsel, Berniece A. Browne, Senior Counsel, and Mark A. Barnett, Attorney, Office of the Chief Counsel for Import Administration, Department of Commerce, Washington, DC. Of counsel was Thomas H. Fine, Department of Commerce, Washington, DC.
 Herbert C. Shelley, Howrey & Simon, Washington, DC, argued for defendants-appellees SKF USA, Inc., et al. With him on the brief were Alice A. Kipel and Anne Talbot.
 Peter O. Suchman, Powell, Goldstein, Frazer & Murphy LLP, Washington, DC, for defendants-appellees Koyo Seiko Co., Ltd., et al. With him on the brief were Neil R. Ellis and Susan M. Mathews.
 Robert A. Lipstein, Lipstein, Jaffe & Lawson, L.L.P., Washington, DC, for defendants-appellees NSK Ltd., et al. With him on the brief were Matthew P. Jaffeand Grace W. Lawson.
 Donald J. Unger, Barnes, Richardson & Colburn, Chicago, IL, for defendants-appellees NTN Bearing Corporation of America, et al. With him on the brief was Kazumune V. Kano. Of counsel was Robert E. Burke.
 Walter J. Spak, White & Case, Washington, DC, for defendants-appellees NMB Thai Ltd., et al. With him on the brief were William J. Clinton, Christopher F. Corr, and Richard J. Burke. Of counsel was Richard G. King.
 Max F. Schutzman, Grunfeld, Desiderio, Lebowitz & Silverman LLP, New York City, for defendants-appellees FAG (U.K.) Limited, et al. With him on the brief were Andrew B. Schroth and Mark E. Pardo.
 Stephen L. Gibson, Arent Fox Kintner Plotkin & Kahn, Washington, DC, for INA Walzlager Schaeffler KG, et al. With him on the brief was Peter L. Sultan.
 Charles W. Petty, Jr., Ross & Hardies, Washington, DC, for defendant-appellee GMN Georg Muller Nurnberg AG. Of counsel was Jeffrey S. Neeley.
 Before RICH, MAYER, and RADER, Circuit Judges.
 RADER, Circuit Judge.
 
 
 1
 The United States Court of International Trade upheld an antidumping determination of the United States Department of Commerce (Commerce). See Torrington Co. v. United States, 881 F.Supp. 622, 629-33 (Ct. Int'l Trade 1995). Commerce had declined to apply 19 C.F.R. § 353.26(a) (1992) in calculating the "United States price" and to exclude below-cost sales from its calculation of the "foreign market value" of certain ball bearings. The Torrington Company (Torrington) appealed. Because Torrington did not show that the below-cost sales were actually reimbursements for ball bearing duties or that the below-cost sales were outside "the ordinary course of trade," this court affirms.
 
 I.
 
 2
 On May 15, 1989, Commerce published antidumping duty orders on ball bearings manufactured in France, Germany, Italy, Japan, Romania, Singapore, Sweden, Thailand, and the United Kingdom. See, e.g., Antidumping Duty Orders: Ball Bearings, Cylindrical Roller Bearings, and Spherical Plain Bearings and Parts Thereof From the Federal Republic of Germany, 54 Fed.Reg. 20,900 (May 15, 1989). In 1991, Commerce undertook administrative reviews for each country involved in the duty orders. Commerce published its final determinations on June 24, 1992. These determinations reduced the duties on foreign ball bearings. See Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France; et al.; Final Results of Antidumping Duty Administrative Reviews, 57 Fed.Reg. 28,360 (June 24, 1992) [hereinafter Final Results ].
 
 
 3
 In making its determinations, Commerce compared the United States price (USP) of the imported bearings, see 19 U.S.C. § 1677a (1988),[1] with the foreign market value (FMV) of the same or similar merchandise in a particular foreign home market, see 19 U.S.C. § 1677b. When determining USP, Commerce did not apply its regulation at 19 C.F.R. § 353.26(a). This regulation further decreases the USP to account for the amount of any antidumping duty that a foreign producer "[p]aid directly on behalf of the importer" or "[r]eimbursed to the importer."[2]
 
 
 4
 When determining FMV, Commerce may use either an average of actual sales prices or a "constructed value." See 19 U.S.C. § 1677b(a)(2). Title 19 defines constructed value as the sum of (A) "the cost of materials ... and of fabrication or other processing," (B) "an amount for general expenses and profit," and (C) the cost of packaging. 19 U.S.C. § 1677b(e)(1). In assessing the "amount for general expenses and profit," Commerce must consider whether the amount is "equal to that usually reflected in sales of merchandise of the same general class or kind as the merchandise under consideration which are made by producers in the country of exportation, in the usual commercial quantities and in the ordinary course of trade." 19 U.S.C. § 1677b(e)(1)(B) (emphasis added). The statute defines "ordinary course of trade" as "the conditions and practices which ... have been normal in the trade under consideration with respect to merchandise of the same class or kind." 19 U.S.C. § 1677(15).
 
 
 5
 When calculating FMV based on actual sales figures, Commerce must disregard sales made "at less than the cost of production." 19 U.S.C. § 1677b(b). However, the statute does not expressly state whether such below-cost sales must also be disregarded for purposes of calculating the "amount for general expenses and profit" when using a constructed value. Commerce did not exclude the below-cost sales on these bearings.
 
 
 6
 On July 21, 1992, Torrington, a domestic producer of ball bearings, filed suit to protest Commerce's determinations. Specifically, Torrington argued that in calculating USP, Commerce should have applied 19 C.F.R. § 353.26(a) to foreign manufacturers' sales to their U.S. importers at prices below cost plus a reasonable profit. Although not direct payments or reimbursements, these transactions, according to Torrington, were equivalent to, and should be regarded as, duty reimbursements. Torrington also argued that when using a constructed value for FMV, Commerce should have excluded below-cost sales in calculating the "amount for general expenses and profit." On these issues, the Court of International Trade affirmed Commerce's actions.
 
 II.
 
 7
 This court, duplicating the review given by the Court of International Trade, upholds an antidumping duty determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B); see also Torrington Co. v. United States, 82 F.3d 1039, 1044 (Fed.Cir.1996). In conducting this review, this court accords "substantial deference to an agency's interpretation of its own regulations." Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512, 114 S.Ct. 2381, 2386, 129 L.Ed.2d 405 (1994).
 
 A.
 
 8
 The "reimbursement regulation," 19 C.F.R. § 353.26, provides, in relevant part:
 
 
 9
 (a) In general. (1) In calculating the United States price, the Secretary will deduct the amount of any antidumping duty which the producer or reseller:
 
 
 10
 (i) Paid directly on behalf of the importer; or
 
 
 11
 (ii) Reimbursed to the importer.
 
 
 12
 This regulation has the effect of reducing the importer's USP by the amount of any reimbursed duties, thus exposing the importer to further antidumping duties to the extent that the manufacturer paid or reimbursed the original duty assessment.
 
 
 13
 The laws of the United States, however, do not make money transfers between related foreign and domestic businesses illegal. For this reason, Commerce correctly interprets its regulation to consider below-cost transfers between related manufacturers and importers presumptively legal. As Commerce persuasively reasoned: "Money can be transferred between related parties for a variety of reasons and by a number of means, of which manipulation of transfer pricing is only one. Evidence of below-cost transfer pricing between related parties is not in itself evidence of reimbursement of antidumping duties." Final Results, 57 Fed.Reg. at 28,371. Thus, Commerce requires evidence of a link between any money transferred and the antidumping duty before it will impose a second duty on the importer or before it will commit resources to investigate such a transfer.
 
 
 14
 Because Torrington did not produce evidence of a link between the below-cost transfers and the duties, Commerce did not apply section 353.26(a). This court sustains that action on review. Commerce has reasonably interpreted and applied its regulation to require some concrete link between below-cost transfers and antidumping duties before automatically assuming or undertaking an investigation to determine that a foreign producer is compensating an importer for the effects of duties.
 
 B.
 
 15
 Commerce also included below-cost sales in its calculations of the constructed value for FMV. Specifically, Commerce did not exclude these sales when calculating the "amount for general expenses and profit." See 19 U.S.C. § 1677b(e)(1)(B). Commerce's decision produced a lower constructed value and consequently a lower antidumping duty.
 
 
 16
 Title 19, however, only requires exclusion of below-cost sales if those sales are outside "the ordinary course of trade." Id. The statute further defines "ordinary course of trade" as "the conditions and practices which ... have been normal in the trade under consideration with respect to merchandise of the same class or kind." 19 U.S.C. § 1677(15). Under this definition, an enterprise may indeed make some sales below cost "in the ordinary course of trade." For instance, a commodity might be sold below cost as part of a customer incentives program or as part of a volume discount or package deal. Without any record evidence showing that the below-cost sales in this case were outside the "ordinary course of trade," Commerce correctly included these sales in its FMV calculation.
 
 
 17
 The requirement in 19 U.S.C. § 1677b(b) that Commerce "shall" disregard below-cost sales when calculating FMV based on actual sales figures does not apply when Commerce calculates FMV based on constructed value. Subsection 1677b(b) makes it clear that the mandatory exclusion of below-cost sales refers only to a calculation of FMV based on actual sales prices, rather than on constructed value:
 
 
 18
 Whenever sales are disregarded by virtue of having been made at less than the cost of production and the remaining sales, made at not less than cost of production, are determined to be inadequate as a basis for the determination of foreign market value under subsection (a) of this section, the administering authority shall employ the constructed value of the merchandise to determine its foreign market value.
 
 
 19
 19 U.S.C. § 1677b(b) (emphasis added). The statute specifies that the actual sales method, including disregard for below-cost sales, may not suffice to determine FMV. In those instances, Commerce "shall employ the constructed value" method. It would be illogical to "employ the constructed value" when "[below-cost] sales are disregarded" if below-cost sales are also disregarded when calculating constructed value. Thus Commerce correctly reads the statute to include below-cost sales for calculation of FMV by the constructed value method.
 
 
 20
 For the foregoing reasons, the decision of the United States Court of International Trade is affirmed.
 
 COSTS
 
 21
 Each party to bear its own costs.
 
 
 22
 AFFIRMED.
 
 
 
 [1]
 Effective January 1, 1995, the Uruguay Round Amendments Act, Pub.L. No. 103-465, 108 Stat. 4809 (1994) (URAA), amended the antidumping laws. The URAA, however, does not apply to administrative reviews initiated prior to January 1, 1995. See Torrington Co. v. United States, 68 F.3d 1347, 1352 (Fed.Cir.1995). Consequently, all citations herein refer to the pre-URAA code
 
 
 [2]
 The parties did not present to this court the issue of whether the statute provides authority for Commerce to promulgate and apply this regulation. When Commerce has once assessed an importer a duty to compensate for any deficiency between the USP and the FMV, the statute does not seem to authorize a further assessment of duty to the same importer on the theory that a foreign supplier may have helped an importer with its duty burden. Once the duty is paid a single time to account for the economic consequences of dumping, further duties would seem punitive rather than necessary to bring market prices into some hypothetical balance. Nonetheless, the parties did not present this issue to this court. Therefore, this court declines to reach the statutory authority for this regulation