SHINYEI CORPORATION OF AMERICA, Plaintiff–Appellant,

v.

UNITED STATES, Defendant–Appellee.

No. 03–1288.

United States Court of Appeals, Federal Circuit.

Jan. 20, 2004.

---

Charles H. Bayar, of Scarsdale, NY, argued for plaintiff-appellant.

James A. Curley, Attorney, Civil Division, Commercial Litigation, International Trade Field Office, United States Department of Justice, of New York, NY, argued for defendant-appellee. With him on the brief was Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, Commercial Litigation Branch of Washington, DC and John J. Mahon, Acting Attorney in Charge, of New York, NY. Of counsel on the brief was, Edward N. Maurer, Office of Assistant Chief Counsel, Bureau of Customs and Border Protection, New York, NY.

Before NEWMAN, MICHEL, and RADER, Circuit Judges.

MICHEL, Circuit Judge.

Shinyei Corporation of America ("Shinyei") appeals from a decision of the United States Court of International Trade dismissing its complaint for lack of subject matter jurisdiction. *Shinyei Corp. of Am. v. United States,* 248 F.Supp.2d 1350 (Ct. Int'l Trade 2003). The Court of International Trade held that liquidation of the subject entries mooted Shinyei's cause of action under the Administrative Procedure Act, 5 U.S.C. § 702, challenging liquidation instructions issued by the United States Department of Commerce ("Commerce") as in violation of 19 U.S.C. § 1675(a)(2)(C) and seeking corrected instructions. Section 1675(a)(2)(C) requires that the results of an administrative review of an antidumping duty determination "shall be the basis for the assessment of countervailing or antidumping duties on entries of merchandise covered by the determination and for deposits of estimated duties." 19 U.S.C. § 1675(a)(2)(C) (2000). We find that liquidation did not moot Shinyei's cause of action because section 516A of the Tariff Act does not apply. Nor does section 1514, or any other section, of the statute impliedly forbid the relief Shinyei seeks under the Administrative Procedure Act and the court's remedial powers statute, 28 U.S.C. § 2636. Thus, the court's ruling that after liquidation it could no longer grant relief was in error. Accordingly, we reverse the dismissal decision of the Court of International Trade and remand for further proceedings on the merits of Shinyei's claim.

## I.

## BACKGROUND

Shinyei, a wholly owned subsidiary of Shinyei Kaisha Company ("Kaisha"), a Japanese trading company, purchased an-

tifriction bearings from Kaisha and imported these bearings into the United States during the period from May 1, 1990 to April 30, 1991. Kaisha had purchased its bearings from six Japanese manufacturers, namely Fujino Iron Works Co., Ltd. ("Fujino"), Nakai Bearing Co., Ltd. ("Nakai"), Nankai Seiko Co., Ltd. ("Nankai"), Inoue Jikuuke Kogyo Co. ("Inoue"), Showa Pillow Block Mfg., Ltd. ("Showa"), and Wada Seiko Co., Ltd. ("Wada").

The types of antifriction bearings manufactured by these six manufacturers, along with numerous others, were the subjects of several Commerce antidumping investigations. On November 9, 1988, Commerce published its preliminary determination with regard to this investigation, instructing the United States Customs Service ("Customs") that: (a) liquidations of the subject merchandise should be suspended; and (b) deposits or bonds should be required at a certain rate for future entries from all non-investigated manufacturers, producers and exporters, including the six manufacturers mentioned above. *Preliminary Determinations of Sales at Less Than Fair Value: Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From Japan,* 53 Fed. Reg. 45,343 (Nov. 9, 1988). This deposit and bond rate was corrected by Commerce in the final determination, *Final Determination of Sales at Less Than Fair Value: Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From Japan,* 54 Fed.Reg. 19,101 (May 3, 1989), and Commerce published an antidumping duty order on the basis of this determination, *Antidumping Duty Orders: Ball Bearings, Cylindrical Roller Bearings, and Spherical Plain Bearings, and Parts Thereof From Japan,* 54 Fed.Reg. 20,904 (May 15, 1989).

In 1991, Commerce commenced its second administrative review with respect to various manufacturers and exporters. *See Initiation of Antidumping Administrative Reviews of Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From the Federal Republic of Germany, France, Italy, Japan, Romania, Singapore, Sweden, Thailand, and the United Kingdom,* 56 Fed.Reg. 29,618 (June 28, 1991); *see also Initiation of Antidumping and Countervailing Duty Administrative Reviews,* 56 Fed.Reg. 33,251 (July 19, 1991) and 56 Fed.Reg. 40,305 (Aug. 14, 1991). During the second annual review, from May 1990 to April 1991, Shinyei deposited estimated antidumping duties on the entries at issue at a rate of 45.83% ad valorem. On March 31, 1992, Commerce published the preliminary results of its second administrative reviews. *See Preliminary Results of Antidumping Duty Administrative Reviews and Partial Termination of Administrative Reviews of Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France, et al.,* 57 Fed.Reg. 10,859 (Mar. 31, 1992). On June 24, 1992, Commerce published the final results of the second review in which Commerce established specific antidumping duties and deposit rates for merchandise manufactured by manufacturers under review, including the six manufacturers in question. *Final Results of Antidumping Duty Administrative Review of Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France, et al.,* 57 Fed.Reg. 28,360 (June 24, 1992).[1] While the estimated duties paid by Shinyei were

---

1. These final results were amended to correct clerical errors. *See Amendment to Final Results of Antidumping Duty Administrative Review of Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France, et al.,* 57 Fed.Reg. 32,969 (July 24, 1992); *Amendment to Final Results of Antidumping Duty Administrative Review of Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France, et al.,* 57 Fed.Reg. 59,080 (Dec. 14, 1992).

at a rate of 45.83% ad valorem, the final results of the review set duty rates from 1.43% to 16.71% ad valorem, depending on which of Shinyei's six manufacturers made the subject goods. *See Final Results of Antidumping Duty Administrative Review of Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France, et al.*, 57 Fed.Reg. 28,360 (June 24, 1992); *Amendment to Final Results of Antidumping Duty Administrative Review of Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France, et al.*, 57 Fed.Reg. 59,080 (Dec. 14, 1992). Consequently, Commerce issued an instruction ordering Customs to liquidate all merchandise of the type at issue that was imported from Japan during the second period of review (except for the products of certain manufacturers) at the rate designated in the final review determination.

Subsequently, two domestic producers, Torrington Company and Federal–Mogul, and a number of other interested parties, not including Shinyei, filed suit in the Court of International Trade challenging the final results of the administrative review under section 516A(a)(2)(B)(iii) of the Tariff Act. The Court of International Trade enjoined liquidation of all entries of subject goods covered by the final results of the administrative review pursuant to section 516A(c)(2) of the Tariff Act. *Federal–Mogul Corp. v. United States*, Ct. No. 92–06–00422 (Ct. Int'l Trade July 14, 1992) (order granting preliminary injunction). Accordingly, liquidation of Shinyei's entries (entries manufactured by subjects of the administrative review) was suspended pending the final decision of the Court of International Trade in the litigation.

In the course of the litigation, the Court of International Trade issued a number of orders and opinions resulting in changes to the antidumping duty rates for antifriction bearings. In the context of this litigation, the Court of International Trade ordered Commerce to make a series of methodological changes and to recalculate the antidumping margin for certain firms under review. The Court of International Trade ordered Commerce to, inter alia: (1) change its methodology to account for value-added taxes with respect to the comparison of domestic and home market prices; (2) not deduct pre-sale inland freight incurred in the home market if Commerce determined that there was no statutory authority to make such a deduction; (3) develop a methodology which removes post-sale price adjustments and rebates paid on out-of-scope merchandise from any adjustment made to foreign market value or to deny such an adjustment if a viable method could not be found; and (4) correct certain clerical errors. *See Amended Final Results of Antidumping Duty Administrative Review of Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France, et al.*, 63 Fed.Reg. 8908 (Feb. 23, 1998) ("*Amended Review Results*") (summarizing rulings of the Court of International Trade over the course of the antifriction bearing litigation).

On October 15, 1997, this court affirmed the Court of International Trade's affirmance of Commerce's final remand results affecting final assessment rates for the pending cases (except the reviews involving one particular Japanese manufacturer, not at issue in the present case, whose review was still in litigation). *Torrington Co. v. United States*, 127 F.3d 1077 (Fed. Cir.1997).

On February 23, 1998, Commerce published the amended final results reflecting the courts' orders and opinions, as required by section 516A(e) of the Tariff Act. *See Amended Review Results*, 63 Fed.Reg. 8908. Pursuant to section 516A(e) of the Tariff Act, Commerce amended the final results of the administrative review for the

period May 1, 1990 to April 30, 1991 to reflect revised weighted-average margins, i.e., duty rates. The Amended Review Results set forth revised rates for five of the six subject manufacturers: Fujino (1.83%); Inoue (1.89%); Nakai (6.47%); Nankai (9.41%) and Showa (7.51%). The rate for the sixth manufacturer, Wada, remained at 16.71%. *Final Results of Antidumping Duty Administrative Review of Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France, et al.*, 57 Fed.Reg. 28,360 (June 24, 1992). The Amended Review Results noted that Commerce would determine and Customs would assess "appropriate antidumping duties on entries of the subject merchandise made by firms covered by these reviews." *Amended Review Results*, 63 Fed.Reg. 8908. The Amended

Review Results also noted that Commerce had already issued instructions to Customs for certain companies whose margins had not changed from those announced in the June 24, 1992 Final Results and July 24 and December 14, 1992 amendments thereto. *Id.*

On October 22, 1998, Commerce issued final amended instructions to Customs regarding the liquidation of all second review entries of the merchandise at issue from Japan produced by Nankai. On June 26, 1998, Commerce issued instructions to Customs regarding the liquidation of all second review entries of the merchandise at issue from Japan produced by Fujino. These instructions failed to include Shinyei's imported bearings from these manufacturers.[2]

---

**2.** Indeed, this is not the first instance in which Commerce is alleged to have erroneously limited application of amended final results in accordance with an order of the Court of International Trade to exclude certain parties. *See Consolidated Bearings Co. v. United States*, 348 F.3d 997 (Fed.Cir.2003). In *Consolidated*, Consolidated argued that Commerce instructions ordering liquidation of its merchandise "as entered" were erroneous because these instructions were not in accordance with the amended review results of an administrative review to which Consolidated was not a party, but to the results of which Consolidated argued it was entitled. Ultimately, this court held that Consolidated was not entitled to instructions reflecting the lower rate set forth in the amended review results because the sales practices of the reseller that exported the subject goods to Consolidated were "simply not covered by the administrative review." *Id.* at 1006.

Here, the government argued repeatedly that Customs' liquidation of the entries "implemented the final results of Commerce's administrative review," "implemented Commerce's administrative review determination," and was "as a result of the review." Indeed, during oral argument, the government argued that the "instructions that Commerce issued are the correct—reflect correctly what happened during the administrative review." Taking the allegations in the com-

plaint as true, as we must at this stage, we do not find this argument compelling. It is undisputed that Shinyei's six manufacturers were covered by the Amended Review Results of the administrative review. It is also undisputed that the Amended Review Results were to cover "entries of the subject merchandise made by firms covered by these reviews." *See Amended Review Results*, 63 Fed.Reg. 8908. Finally, it is undisputed that Shinyei's entries from Fujino and Nankai were liquidated "as entered" at a rate of 45.83%, not the reduced rates set forth in the Amended Review Results. If Shinyei's entries were indeed covered by the Amended Review Results, as it claims, there was presumably an error somewhere in the instruction/liquidation process. The question for the trial court is whether Commerce's instructions with regard to Fujino and Nankai were not in accordance with the Amended Review Results (as required by section 1675(a)(2)), or whether the error was in Customs' liquidation of the subject entries despite correct instructions. If it is the latter, despite both parties' arguments to the contrary, Shinyei's appropriate avenue for relief would be under 19 U.S.C. § 1514. Notably, Shinyei filed protests against the Customs liquidations to " 'preserve its rights in the case it should be ultimately decided that the . . . liquidations reflect Customs Error rather than Commerce Error.' " *Shinyei*, 248 F.Supp.2d at 1353 n. 7 (quoting Shinyei's

Shinyei filed a complaint with the Court of International Trade on March 23, 2000. Shinyei sought a writ of mandamus directing the United States Customs Service to liquidate sixty-three of Shinyei's entries of certain bearings at the rates set forth in the Amended Review Results, or to declare Commerce instructions in violation of 19 U.S.C. § 1675(a)(2) and remand its case to Commerce for the purpose of issuing an appropriate set of instructions to include Shinyei's entries at the lowered duty rates. Because Shinyei was seeking immediate liquidation based on the Amended Review Results reflecting the courts' decisions in *Federal–Mogul* and *Torrington,* Shinyei did not seek, and the court did not issue, any injunction to suspend liquidation of the entries at issue pending its final decision. On August 1, 2000, Commerce issued a "clean-up" instruction to Customs to liquidate "as entered" all second review period entries of the merchandise at issue from Japan that had not been liquidated under the previously issued instructions. The clean up instructions did cover Shinyei's imports but directed liquidation at the estimated rate ("as entered"), not the lower rate ordered by the Court of International Trade and reflected in the Amended Review Results. The liquidation of the entries at issue occurred between September 8, 2000 and February 9, 2001; all but two of the entries were liquidated before December 15, 2000.

On September 25, 2002, the Court of International Trade granted Shinyei's motion for leave to amend its complaint. Shinyei's amended complaint limited its claim to Commerce error, alleging:

> In this civil action, [Shinyei] claims generally that Commerce issued certain liquidation instructions to Customs to im-

plement the results of an antidumping administrative review. In violation of 19 U.S.C. § 1675(a)(2), these instructions did not permit the review results to be the basis for assessments of antidumping duty on entries for which [Shinyei] was the importer of record. As a consequence, Customs liquidated the entries [at issue] under other, inapplicable instructions resulting in substantial and erroneous assessments of excessive antidumping duty on the entries, as well as the attendant denial of interest on excess deposits of antidumping duty that should have been refunded.

Specifically, Shinyei contested the instructions concerning Nankai and Fujino,[3] arguing that:

> Commerce, however, did not state in the [Nankai] instructions or otherwise advise Customs that [Shinyei] was the importer of the ball bearings sold to the [United States] [c]ustomers, or that [Kaisha] was an intermediary in the sales to the [United States] [c]ustomers.... The [Nankai] instructions stated that they constituted the immediate lifting of suspension of liquidation of entries of the merchandise described therein, and that they were not to be disclosed to the public.

With respect to the Fujino instruction, Shinyei argued:

> Commerce, however, omitted from the [Fujino] instructions specific assessment rates that it had calculated in the [second] review for five other [United States] [c]ustomers. Moreover, Commerce did not state in the [Fujino] instructions or otherwise advise Customs that [Shinyei] was the importer of the

---

response to the government's motion to dismiss).

**3.** Before the trial court, Shinyei stated that the instructions regarding the other four of

the six manufacturers are "no longer in issue in this civil action." *Shinyei,* 248 F.Supp.2d at 1353 n. 6.

ball bearings sold to the [United States] [c]ustomers, or that [Kaisha] was an intermediary in the sales to the [United States] [c]ustomers.... The [Fujino] instructions stated that they constituted the immediate lifting of suspension of liquidation of entries of the merchandise described therein, and that they were not to be disclosed to the public.

On October 8, 2002, the United States moved to dismiss the case pursuant to USCIT R. 12(b)(1) for lack of subject matter jurisdiction, and USCIT R. 12(b)(6) for failure to state a claim on which relief can be granted. The Court of International Trade granted the United States' motion under rule 12(b)(1).

Shinyei timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

This opinion follows the court's review of the record and consideration of the parties' oral argument, heard on December 5, 2003.

## II.

## ANALYSIS

### A. Subject Matter Jurisdiction in the Court of International Trade

■ As discussed in greater detail below, *see infra* Section II.B, Shinyei's cause of action is based in the Administrative Procedure Act ("APA") pursuant to 5 U.S.C. § 702. It is well established that the APA "does not afford an implied grant of subject-matter jurisdiction permitting federal judicial review of agency action." *Califano v. Sanders*, 430 U.S. 99, 107, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). The APA is not a jurisdictional statute and "does not give an independent basis for finding jurisdiction in the Court of International Trade." *Am. Air Parcel Forwarding Co. v. United States*, 718 F.2d 1546, 1552 (Fed.Cir.1983). Thus, the Court of International Trade must have its own independent basis for jurisdiction un-

der 28 U.S.C. § 1581 for Shinyei's case to proceed before that court.

■ Of the eight specific jurisdictional grants in section 1581, sections 1581(a) and (c) arguably apply. Section 1581(a) provides the Court of International Trade exclusive jurisdiction over civil actions commenced to contest the denial of a protest under section 515 of the Tariff Act of 1930. 28 U.S.C. § 1581(i)(a) (2000). Section 515 of the Tariff Act provides for the administrative review of protests filed under section 514 of the Tariff Act, which in turn provides for protests of decisions of Customs. 19 U.S.C. §§ 1514, 1515 (2000). Because the alleged agency error in the present case is on the part of Commerce, and not Customs, sections 514 and 515 do not apply. Accordingly, section 1581(a) cannot vest the Court of International Trade with jurisdiction over the case at bar.

■ Similarly, section 1581(c) does not provide the Court of International Trade with jurisdiction. Section 1581(c) provides the court with exclusive jurisdiction over actions commenced under section 516A of the Tariff Act. 28 U.S.C. § 1581(c) (2000). Section 516A provides for judicial review in countervailing duty and antidumping duty proceedings, but specifically enumerates "reviewable determinations" under that section. 19 U.S.C. § 1516a(a)(2)(B) (2000). As will be discussed in greater detail below, *see infra* Section II.B.1, the determinations enumerated in section 516A(a)(2)(B) do not include the Commerce instructions challenged by Shinyei in this action.

■ In cases where the specific jurisdictional grants of section 1581(a)-(h) do not apply, section 1581 also contains a residual jurisdictional provision, which reads:

(i) In addition to the jurisdiction conferred upon the Court of International

Trade by subsections (a)-(h) of this section and subject to the exception set forth in subsection (j) of this section, the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—

(1) revenue from imports or tonnage;

(2) *tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;*

(3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or

(4) *administration and enforcement with respect to the matters referred to in paragraphs (1)-(3) of this subsection and subsections (a)-(h) of this section.*

This subsection shall not confer jurisdiction over an antidumping or countervailing duty determination which is reviewable either by the Court of International Trade under section 516A(a) of the Tariff Act of 1930 or by a binational panel under article 1904 of the North American Free Trade Agreement or the United States–Canada Free–Trade Agreement and section 516A(g) of the Tariff Act of 1930.

28 U.S.C. § 1581(i) (2000) (emphases added).

We hold that section 1581(i)(4) provides the Court of International Trade with jurisdiction over the present case. *See Consolidated Bearings Co. v. United States,* 348 F.3d 997, 1002 (Fed.Cir.2003) ("Consequently, an action challenging Commerce's liquidation instructions is not a challenge

to the final results, but a challenge to the 'administration and enforcement' of those final results. Thus, Consolidated challenges the manner in which Commerce administered the final results. Section 1581(i)(4) grants jurisdiction to such an action.").[4]

Indeed, the government does not argue that jurisdiction under section 1581(i) was improper at the time Shinyei filed suit. Rather, the government argues that the Court of International Trade's jurisdiction over Shinyei's APA cause of action was divested by liquidation of the subject entries. The remainder of this opinion will address Shinyei's cause of action under the APA and whether liquidation of the subject entries renders said cause of action moot.

**B. Cause of Action Under the Administrative Procedure Act**

Shinyei's cause of action is brought under the APA. 5 U.S.C. § 702 (2000). Section 702 provides:

Right of review

*A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.* An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or de-

---

4. There is no dispute that Shinyei's action was timely commenced under 28 U.S.C. § 2636(i).

cree may be entered against the United States: Provided, That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance. *Nothing herein* (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) *confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.*

*Id.* (emphases added).

Here, Shinyei challenges Commerce's clean up instructions as in violation of section 1675(a)(2)(C). Under section 1675(a)(2)(C), the results of an administrative review determination "shall be the basis for the assessment of countervailing or antidumping duties on entries of merchandise covered by the determination and for deposits of estimated duties." 19 U.S.C. § 1675(a)(2)(C) (2000). Thus, to comply with section 1675(a)(2)(C), Commerce instructions must correctly reflect the final administrative review determination so that the determination is the basis for the assessment at liquidation; if Commerce instructions are inaccurate or incorrect, Customs will liquidate the entries according to the improper instructions and the determination will not be the basis for the assessment of duties. Shinyei argues that the clean up instructions issued by Commerce to Customs applied the wrong antidumping duty rate to the subject entries (the "as entered" rate), and that Shinyei has been injured as a direct result of that agency action. The rate applied was 45.83% ad valorem, the rate at which Shinyei deposited a bond at the time of entry. Under Shinyei's view it should have been between 1.83% and 16.71% ad valorem, based on the manufacturer, as set forth in the Amended Review Results. According-

ly, Shinyei seeks reliquidation of the subject entries at the lower rate so it can receive a refund of the overpaid duties.

Shinyei argues that the Court of International Trade's dismissal of this case was tantamount to a dismissal under section 702 of the APA, because the Court of International Trade essentially found that the Trade Act "impliedly forbids the relief which is sought." Though it is not completely clear, we understand the government to be making two parallel arguments in support of dismissal. First, the government appears to argue, and the Court of International Trade found, that section 516A of the Tariff Act, and cases interpreting that section, divest the court of subject matter jurisdiction over a case once the subject entries have been liquidated. Second, the government appears to argue that the statutory scheme presents only one narrow exception to finality of a liquidation, i.e., protests of Customs' decisions under section 1514(a). The Government suggests that the lack of a "reliquidation" provision within the statutory scheme for any case outside of section 1514 constitutes an implied prohibition of the relief sought, namely, corrected liquidation instructions in accordance with the Amended Review Results that will prompt reliquidation at lower duty rates, rather than the higher "as entered" rates deposited by Shinyei upon entry. Thus, we understand the government to argue that because sections 516A and 1514 preclude the Court of International Trade from granting the requested relief, and because section 702 of the APA cannot "confer[ ] authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought," thus overcoming the problems posed by sections 516A and 514, the case is moot. We address these arguments in turn.

### 1. The Effect of Section 516A

██ Section 516A of the Tariff Act provides for "judicial review in countervailing duty and antidumping duty proceedings." Section 516A(c) reads:

(c) Liquidation of entries

(1) Liquidation in accordance with determination

*Unless such liquidation is enjoined by the court under paragraph (2) of this subsection, entries of merchandise* of the character covered by a determination of the Secretary, the administering authority, or the Commission contested under subsection (a) of this section *shall be liquidated in accordance with the determination of the Secretary, the administering authority, or the Commission,* if they are entered, or withdrawn from warehouse, for consumption on or before the date of publication in the Federal Register by the Secretary or the administering authority of a notice of a decision of the United States Court of International Trade, or of the United States Court of Appeals for the Federal Circuit, not in harmony with that determination. Such notice of a decision shall be published within ten days from the date of the issuance of the court decision.

(2) Injunctive relief

In the case of a determination described in paragraph (2) of subsection (a) of this section by the Secretary, the *administering authority, or the Commission, the United States Court of International Trade may enjoin the liquidation of some or all entries of merchandise covered by a determination of the Secretary, the administering authority, or the Commission, upon a request by an interested party for such relief and a proper showing that the requested relief should be granted under the circumstances.*

(3) Remand for final disposition

If the final disposition of an action brought under this section is not in harmony with the published determination of the Secretary, the administering authority, or the Commission, the matter shall be remanded to the Secretary, the administering authority, or the Commission, as appropriate, for disposition consistent with the final disposition of the court.

19 U.S.C. § 1516a(c) (2000) (emphases added). Section 516A(e) provides for liquidation in accordance with the final decision of the Court of International Trade or this court:

(e) Liquidation in accordance with final decision

If the cause of action is sustained in whole or in part by a decision of the United States Court of International Trade or of the United States Court of Appeals for the Federal Circuit—

(1) entries of merchandise of the character covered by the published determination of the Secretary, the administering authority, or the Commission, which is entered, or withdrawn from warehouse, for consumption after the date of publication in the Federal Register by the Secretary or the administering authority of a notice of the court decision, and

(2) entries, the liquidation of which was enjoined under subsection (c)(2) of this section,

*shall be liquidated in accordance with the final court decision in the action.* Such notice of the court decision shall be published within ten days from the date of the issuance of the court decision.

*Id.* 1516a(e) (emphasis added). Thus, under section 516As parallel liquidation and injunction provisions, subject merchandise that is entered prior to publication of the final decision of the Court of International Trade or this court is liquidated as entered

unless liquidation is enjoined. *Id.* 1516a(c). In contrast, merchandise entered after the final decision of the Court of International Trade or this court must be liquidated in accordance with that final decision. *Id.* 1516a(e).

The government argues, and the trial court held, that the court's subject matter jurisdiction ended at the moment the subject entries were liquidated because section 516A of the Tariff Act, and cases interpreting that section, preclude the court from granting Shinyei's requested relief, namely reliquidation.[5] As explained below, the trial court's reliance on *Zenith Radio Corp. v. United States*, 710 F.2d 806 (Fed.Cir.1983), and *Mitsubishi Electronics America, Inc. v. United States*, 848 F.Supp. 193 (Ct. Int'l Trade 1994), in dismissing Shinyei's complaint was erroneous.

In *Zenith*, a United States manufacturer of television receivers filed an action in the Court of International Trade challenging an annual review determination by Commerce. Zenith sought a preliminary injunction against liquidation of certain entries pending the final determination of the Court of International Trade, which the Court of International Trade denied. This court held that "[o]nce liquidation occurs, a subsequent decision by the trial court on the merits of Zenith's challenge can have no effect on the dumping duties assessed on entries of television receivers during the '79–'80 review period." *Zenith*, 710 F.2d at 810. The court based its decision on two statutory provisions: sections 516A(e) and 516A(c)(1), each of which is excerpted above. This court found that "[t]he statutory scheme has no provision permitting reliquidation in this case or imposition of higher dumping duties after liquidation if Zenith is successful on the merits" and that "[t]he court would be

powerless to grant the only effective remedy in response to Zenith's request for review: assessment of correct dumping duties on entries occurring during the '79–'80 review period." *Id.* Accordingly, the court found that Zenith would suffer irreparable harm if liquidation was not enjoined, and reversed the trial court's denial of a preliminary injunction on that basis.

In *Mitsubishi*, the plaintiff filed suit to contest a decision by Customs denying plaintiff's protest under 19 U.S.C. § 1515(a) challenging the application of the automatic duty assessment provision of 19 C.F.R. § 353.53a(d)(1). Citing *Zenith*, the Court of International Trade held that "Customs' liquidation precludes the [c]ourt from granting plaintiff the relief it now seeks." *Mitsubishi*, 848 F.Supp. at 203. Accordingly, the Court of International Trade determined that the court was "unable to exercise jurisdiction over this action under § 1581(i)." *Id.*

In the present case, the Court of International Trade held that "once entries are liquidated, this Court lacks subject matter jurisdiction regardless of whether jurisdiction is sought under 28 U.S.C. § 1581(c) or 28 U.S.C. § 1581(i)," relying, at least in part, on *Mitsubishi.* The trial court disagreed with Shinyei's assertion that the injunction provision of section 516A applies only to actions under section 516A, and thus section 1581(c). The court stated that "to hold otherwise would create a floodgate of litigation by allowing parties, such as Shinyei, who sleep on their rights and permit liquidation to occur, to use 28 U.S.C. § 1581(i) jurisdiction to subsequently revive claims that are otherwise moot." *Shinyei*, 248 F.Supp.2d at 1360.

On appeal, Shinyei attempts to distinguish *Zenith* and *Mitsubishi* on two

---

5. Because the parties concede that the subject entries were actually liquidated, we do not address Shinyei's arguments concerning the effect of deemed liquidation on the Court of International Trade's subject matter jurisdiction, an issue the trial court did not decide.

grounds. We address each one in turn. First, Shinyei argues that *Zenith* does not apply to the case at bar because Commerce liquidation instructions are not antidumping duty determinations reviewable under section 516A. Shinyei argues that "the amount of any antidumping duty" for each subject entry is "determined" in the final review results under 19 U.S.C. § 1675(a)(1)(B) and (a)(2)(A), and that "determinations" in the final review results "shall be the basis for" the antidumping duty assessment rates set forth in the subsequently-issued liquidation instructions. *Id.* § 1675(a)(2)(C). Thus, liquidation instructions, the only agency action at issue in this case, are not "determinations" under section 1675, and are thus not reviewable under section 516A. Shinyei argues that *Zenith* is distinguishable from the present case because *Zenith* involved Commerce error in antidumping duty determinations—which are reviewable under section 516A(a), and are therefore subject to the liquidation/injunction provisions of section 516A(c)(1)—while here, the rates set forth in the Amended Review Results are not challenged, but are conceded to be correct.

■ We agree with Shinyei that *Zenith* is inapplicable to the present case, and that the trial court's "engrafting" of that holding,[6] limited to section 516A actions, onto this case, an action under the APA, constitutes error. As we have recently held, a challenge to Commerce instructions on the ground that they do not correctly implement the published, amended administrative review results, "is not an action defined under section 516A of the Tariff Act." *Consolidated,* 348 F.3d at 1002. Section 516A is limited on its face to the judicial review of "determinations" in coun-

tervailing duty and antidumping duty proceedings. . Section 516A enumerates specific "reviewable determinations," 19 U.S.C. § 1516a(a)(2)(B) (2000), and provides the injunction and liquidation remedies discussed at length above. The case at bar is an action under the APA challenging Commerce instructions as in violation of section 1675(a)(2)(C); section 516A simply does not apply. This court's ruling in *Zenith,* to the extent it is properly extended outside the preliminary injunction context to jurisdictional rulings, was explicitly based on the liquidation and injunction provisions in section 516A, and those provisions are inapplicable here.

Moreover, to the extent the trial court's decision was based upon its concern that allowing Shinyei's case to proceed would "create a floodgate of litigation by allowing parties, such as Shinyei, who sleep on their rights and permit liquidation to occur, to use 28 U.S.C. § 1581(i) jurisdiction to subsequently revive claims that are otherwise moot," we reject the trial court's analysis. In the present case, Shinyei cannot be described as a party that has slept on its rights. Rather, Shinyei filed suit in the Court of International Trade seeking a writ of mandamus ordering liquidation of its entries at the rate it thought it was entitled to—the lower rate set forth in the Amended Review Results. When its entries were liquidated "as entered" pursuant to Commerce's clean up instruction, Shinyei amended its complaint and alleged that Commerce had failed to comply with section 1675(a)(2)(B). We reject the notion that Shinyei was somehow required to seek an injunction to preserve its rights in the present action. Liquidation of Shinyei's entries had already been enjoined by virtue of the injunction issued by the

---

6. The Court of International trade "disagree[d] with Shinyei's assertion that 19 U.S.C. § 1516a injunction provisions apply only in a 19 U.S.C. § 1516a/28 U.S.C.

§ 1581(c) case, and cannot be *engrafted* by implication onto a 28 U.S.C. § 1581(i) case." *Shinyei,* 248 F.Supp.2d at 1360 (emphasis added).

Court of International Trade in *Federal–Mogul.* In fact, when Shinyei commenced this action, Shinyei was seeking immediate liquidation based on Amended Review Results already in place. Shinyei was not required to secure an injunction because its suit was not brought under section 516A of the Tariff Act, and the injunction provisions of that statute were not available to it. As discussed above, Shinyei's challenge was aimed at Commerce *instructions,* not *determinations* reviewable under section 516A. More generally, we do not agree with, or see any evidence supporting, the notion that allowing Shinyei's action to proceed will open a floodgate of litigation, much less the revival of "otherwise moot" claims.

Shinyei also attempts to distinguish *Zenith* and *Mitsubishi* on the ground that the challenged Commerce instructions are *ultra vires.*[7] Because the trial court erred in engrafting *Zenith* onto the facts of the present case, we need not reach this issue.

In view of the above, we find that section 516A does not impliedly forbid the relief requested by Shinyei and render the action moot. Shinyei's action was not brought under section 516A, and the injunction and liquidation provisions of that section, and the case law interpreting those provisions, do not apply.

## 2. The Effect of Section 1514

 We understand the government's second, parallel argument to be that the only basis on which to seek "reliquidation"[8] is through the protest provision of section 1514(a). *See* 19 U.S.C. § 1514(a) (2000). The government ap-

pears to argue that the lack of a statutory provision for "reliquidation" in cases of erroneous Commerce instructions, indeed in any case outside the confines of section 1514(a), is an implied prohibition of the requested relief. According to the government, the inapplicability of section 1514(a) to the case at bar renders the case moot.

Section 1514(a) reads:

(a) Finality of decisions; return of papers

Except as provided in subsection (b) of this section, section 1501 of this title (relating to voluntary reliquidations), section 1516 of this title (relating to petitions by domestic interested parties), and section 1520 of this title (relating to refunds and errors), *decisions of the Customs Service,* including the legality of all orders and findings entering into the same, as to—

(1) the appraised value of merchandise;

(2) the classification and rate and amount of duties chargeable;

(3) all charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury;

(4) the exclusion of merchandise from entry or delivery or a demand for redelivery to customs custody under any provision of the customs laws, except a determination appealable under section 1337 of this title;

(5) *the liquidation or reliquidation of an entry, or reconciliation as to the issues contained therein, or any modification thereof;*

(6) the refusal to pay a claim for drawback; or

---

7. The Government argues that Shinyei has waived this argument because it was presented for the first time on appeal. Because we do not reach the *ultra vires* argument, it is unnecessary for us to reach the waiver argument.

8. Because "[l]iquidation is the 'final computation or ascertainment of the duties or drawback accruing on an entry,'" *Juice Farms, Inc. v. United States,* 68 F.3d 1344, 1345–46 (Fed.Cir.1995), "reliquidation" is the *re-calculation* of the duties or drawback accruing on an entry.

(7) the refusal to reliquidate an entry under subsection (c) or (d) of section 1520 of this title;

shall be final and conclusive upon all persons (including the United States and any officer thereof) unless a protest is filed in accordance with this section, or unless a civil action contesting the denial of a protest, in whole or in part, is commenced in the United States Court of International Trade in accordance with chapter 169 of Title 28 within the time prescribed by section 2636 of that title. When a judgment or order of the United States Court of International Trade has become final, the papers transmitted shall be returned, together with a copy of the judgment or order to the Customs Service, which shall take action accordingly.

*Id.* § 1514(a) (emphases added). Thus, according to the government, a liquidation is final and conclusive unless a protest is filed in accordance with section 1514(a). Here, however, both parties agree that section 1514 is inapplicable because the alleged agency error was on the part of Commerce, not Customs. The government argues, nevertheless, that Shinyei was simply out of luck the moment its entries were liquidated. We reject this argument.

As an initial matter, we disagree that the statute allows for reliquidation only under the protest provisions of section 1514(a). Section 1514(a) states that "*decisions of the Customs Service,* including the legality of all orders and findings entering into the same, *as to* . . . (5) the liquidation

or reliquidation of an entry, or reconciliation as to the issues contained therein, or any modification thereof" are "final and conclusive." *Id.* (emphases added). This section is fairly construed to prohibit a challenge to "decisions" of the Customs Service "as to" liquidation outside the protest provisions of section 1514(a). It is not, however, fairly construed to prohibit reliquidation in all cases, particularly when the alleged error is with Commerce instructions as in violation of section 1675(a)(2)(C), not "decisions of the Customs Service" as to liquidation. Underlying the government's argument as to section 1514 is the notion that Congress has placed significant value on the finality of liquidation, and that finality should not be disturbed outside the provisions of section 1514. We do not agree. To begin with, no section in the statute provides that liquidations are final except within the narrow confines of section 1514; the statute's discussion of finality relates to decisions of Customs. Indeed, the very existence of section 1514 suggests that Congress recognized the necessity of providing relief in situations in which errors occurred.

To the extent the government argues that Congress knew how to provide for "reliquidation" where appropriate (i.e., section 1514), and that the statute's silence as to reliquidation in cases of alleged erroneous instructions indicates Congress' intent not to allow post-liquidation review of Commerce instructions, we disagree. As a threshold matter, the government has not cited to anything in the statute or the legislative history that would support such a reading.[9] We reject the suggestion that

9. Indeed, the legislative history surrounding the 1979 Trade Agreements Act, which created section 516A to allow for increased review of Commerce determinations, suggests quite the opposite. Specifically, Senate Report No. 96–249 notes that Title X of the Act would "revise current law to provide increased opportunities for appeal of certain interlocutory

and all final rulings by the administering authority, or the U.S. International Trade Commission in antidumping and in countervailing duty cases." S.Rep. No. 96–249, at 27 (1979). Specifically, Title X would "amend the Tariff Act of 1930 by adding a new section 516A, which would provide the specific judi-

the statute's silence as to reliquidation in the context of Commerce error can be construed as a prohibition of reliquidation in such cases. Indeed, such an argument is illogical.

First, the Court of International Trade has been granted broad remedial powers. *See* 28 U.S.C. § 2643 (2000). Specifically, the Court of International Trade's relief statute provides for entry of a money judgment "for or against the United States in any civil action commenced under section 1581 or 1582 of this title," *id.* § 2643(a)(1), and allows the court to "order *any other form of relief that is appropriate* in a civil action...." *Id.* § 2643(c)(1) (emphasis added). The absence of an express reliquidation provision should not be read as a prohibition of such relief when the statute provides the Court of International Trade with such broad remedial powers. Here, the requested relief is easily construed as "any other form of relief that is appropriate in a civil action."

Moreover, to accept the government's argument would preclude enforcement of court orders as to duty determinations as soon as entries subject to those orders are liquidated, even where liquidation was under erroneous instructions that fail to reflect the amended administrative review results implementing the courts' determinations, as required by section 1675(a)(2)(C). We will not read such a prohibition into the statute in the complete absence of evidence of such congressional intent. Indeed, short of compelling legislative history or statutory evidence, we decline to find that the statute as a whole was intended to preclude judicial enforcement of court orders after liquidation.

### 3. Availability of Requested Relief

In light of the above, we find that the requested relief is not barred by the statute, in particular sections 516A and 1514.

The injunction/liquidation provisions of section 516A, and this court's *Zenith* decision, are inapplicable to the present case. Neither section 516A nor *Zenith* can be read to preclude reliquidation in actions brought under the APA seeking corrected instructions pursuant to section 1675(a)(2)(C). In addition, the provisions of section 1514, and the remainder of the statute's silence, cannot be read to preclude reliquidation in this case. Because the statute does not "impliedly forbid[ ] the relief which is sought" under the APA, the action is not moot. The Court of International Trade must reach the merits of Shinyei's case to determine if Shinyei is indeed entitled to the requested relief.

### III.

### CONCLUSION

An APA challenge to Commerce instructions as failing to follow a Court of International Trade order, as duly set forth in published Amended Review Results, is not mooted by liquidation of entries as a result of those instructions. Because Shinyei has pleaded an APA cause of action and the Court of International Trade has jurisdiction pursuant to section 1581(i)(4), we reverse the jurisdictional dismissal and remand the action for further proceedings on the merits.

*REVERSED AND REMANDED.*

### COSTS

Each party shall bear its own costs.

cial review procedures for countervailing and antidumping proceedings." *Id.* at 27–28.