**LACLEDE STEEL CO., Plaintiff,**

v.

**UNITED STATES, Defendant,**

and

**Hyundai Pipe Co., Ltd. et al., Defendants–Intervenors.**

**Slip Op. 96–90.**
**Court No. 92–12–00784.**

United States Court of International Trade.

June 10, 1996.

---

Schagrin Associates (Roger B. Schagrin, R. Alan Luberda), Washington, DC, for plaintiff.

Frank W. Hunger, Assistant Attorney General; David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Cynthia B. Schultz); Office of the Chief Counsel for Import Administration, United States Department of Commerce (Lucius B. Lau), of counsel, Washington, DC, for defendant.

Morrison & Foerster (Donald B. Cameron, Craig A. Lewis, Sue–Lynn Koo), Washington, DC, for defendant-intervenors.

## MEMORANDUM and ORDER

GOLDBERG, Judge:

This order concerns Shinho Steel Co.'s ("Shinho"), formerly Korea Steel Pipe Co., motion for permanent injunction, pursuant to 19 U.S.C. § 1516a(c)(2) (1994), regarding the liquidation of certain entries subject to antidumping duties.

Judgment was entered affirming the United States Department of Commerce's ("Commerce") final determination after remand, which imposed antidumping duties at a 4.08 percent rate on Shinho's imports of welded non-alloy steel pipe from the Republic of Korea. *Laclede Steel Co. v. United States*, 19 CIT ——, Slip Op. 95–144, 1995 WL 476716 (Aug. 11, 1995) (*"Laclede"*). On September 13, 1995, Laclede Steel Co. appealed this Court's orders granting Union Steel Manufacturing Co. and Dongbu Steel Co. leave to intervene in the action. This appeal is pending. *Laclede Steel Co. v. United States*, No. 96–1029, 1996 WL 384010 (Fed. Cir. Oct. 19, 1995).

Meanwhile, Commerce ordered a suspension of liquidation of Shinho's entries made between November 1, 1993 through October 31, 1994 ("second period of review") and between November 1, 1994 through October 31, 1995 ("third period of review") pending the completion of the second and third administrative reviews. On January 30, 1996, all requests for the second administrative review were withdrawn, and Shinho withdrew its own request for third period administrative review on March 26, 1996. Commerce terminated those reviews. Accordingly, Shinho's entries made during the second and third review periods became vulnerable to an "automatic assessment of duty" pursuant to 19 C.F.R. § 353.22(e) (1995), at the original 6.21 percent antidumping duty deposit rate that was held unlawful by this Court in *Laclede*. Because the Court's judgment was not appealed with respect to Shinho, all parties agree that this judgment is final as it pertains to Shinho. Shinho now moves for an injunction requiring the liquidation of the subject entries in conformity with the Court's judgment.

The sole issue raised by this motion is whether this Court may exercise its authori-

ty to enjoin Commerce from imposing antidumping duties on Shinho pursuant to Commerce's original determination, and not in accordance with this Court's judgment, in light of a pending appeal that concerns parties other than Shinho. The Court may act on this motion because the Court retains its jurisdiction with respect to the effect of its judgments. *Holmes Products Corp. v. United States,* 17 CIT 356, 356, 822 F.Supp. 754, 756 (1993).

A. Timeliness of Motion

█ As a preliminary matter, Commerce challenges the timeliness of Shinho's motion. The Court observes that none of the Court's own rules specifically address the deadline regarding the filing of a motion for post-judgment injunction. USCIT Rule 56.2(a) which governs, *inter alia,* the time for filing a motion for an injunction in an antidumping or countervailing duty action, provides that the motion is to be filed within 30 days from the date of service of the complaint, or at such other time for good cause shown. This rule was intended to reduce costs and procedural delays in antidumping and countervailing litigation by encouraging the early filing of motions for preliminary injunction. While it appears that the rule is designed to address pre-judgment motions for injunction, it does not preclude the filing of post-judgment motions where good cause is shown beyond the 30–day time limit. It does not, however, offer much guidance to parties filing post-judgment motions for injunction.

█ Congress also failed to impose any specific deadline by which a post-judgment injunction must be filed. Section 1516a(c)(2), which provides for general injunctive relief, does not impose any deadline for injunctions. Instead, it directs the Court to consider motions for injunctive relief in light of a "proper showing that the requested relief should be granted under the circumstances." 19 U.S.C. § 1516a(c)(2).

The Court will therefore consider the timeliness of this motion by examining all the relevant circumstances pursuant to 19 U.S.C. § 1516a(c)(2).[1]

█ First, Shinho correctly points out that it could not have successfully brought any motion for injunction until it and other parties withdrew their requests for administrative review. *See LMI–La Metalli Industriale, S.p.A. v. United States,* 13 CIT 654, 655, 720 F.Supp. 176, 177 (1989) (no irreparable injury can be shown justifying injunction where pending administrative review suspends liquidation of entries and plaintiff will have adequate opportunity to move for injunctive relief at a later date). Although Shinho was one of the parties that made and then withdrew its request for an administrative review, the Court finds that this by itself should not bar its motion. Other circumstances suggest that Shinho's request and withdrawal were made in good faith and did not lead to undue delay. More specifically, Shinho did not have control over the withdrawal of other parties' requests for review. These other pending requests alone would have rendered the filing of the present motion purposeless. *Id.* Additionally, after reevaluating the situation, Shinho became convinced of the futility of pursuing an administrative review and filed the present motion. Shinho should not be penalized for requesting an administrative review and then reevaluating its position in good faith.

Second, there appears to be no formal time limit for post-judgement injunctions at the Court of International Trade. Therefore, no clear deadline exists by which Shinho could take definitive guidance.

Finally, Shinho filed its motion for injunction on the same day that it withdrew its request for administrative review.

Considered together, these circumstances persuade the Court that this motion is timely. The Court and litigants have an interest in motions being brought in a timely manner, and it appears that under the circumstances, Shinho brought the present motion as soon as was practicable.

---

1. In *Holmes,* the Court considered the timeliness of a post-judgment motion for injunction as one factor to be weighed in applying the traditional four prong test for injunction. *Holmes,* 17 CIT at 357–8, 822 F.Supp. at 757. While this appears entirely appropriate under the statute, this Court will address the issue of timeliness of motions separately.

## B. Availability of Injunction under 19 U.S.C. § 1516a(c)(1)

■ Commerce argues that it retains the authority under 19 U.S.C. § 1516a(c)(1) (1994) to order the liquidation of the entries covered in the second and third review periods in accordance with its original determination, and that the Court lacks authority to enter an injunction with respect to those entries. The Court disagrees.

Section 1516a(c)(1) authorizes the liquidation of entries in accordance with Commerce's original determination "[u]nless such liquidation is enjoined by the [Court of International Trade] under [19 U.S.C. § 1516a(c)(2) ]." Section 1516a(c)(2) provides for injunctive relief and has been utilized both for pre-judgment injunctions and post-judgment injunctions. *See Holmes,* 17 CIT 356, 822 F.Supp. 754; *see also* 19 U.S.C. § 1516a(c)(1) (referring to the Court of Appeals for the Federal Circuit, which suggests that injunction may occur after judgment has been rendered by the Court of International Trade, but before the Federal Circuit has ruled on an appeal). Therefore, section 1516a(c)(1) clearly contemplates that the Court may prevent the liquidation of entries in accordance with Commerce's original determination.

## C. Discussion of *Timken*

■ Commerce argues that granting an injunction will disturb the statutory scheme as laid out by Congress and is unnecessary in light of Commerce's compliance with *Timken Co. v. United States,* 8 Fed.Cir. (T) 29, 893 F.2d 337 (1990). The Court considers these arguments together and finds that both lack merit. Granting the injunction is consistent with both the statutory scheme and the policy underlying *Timken.*

Entries subject to an antidumping duty order are to be liquidated in conformity with the final court decision in an action. 19 U.S.C. § 1516a(e) (1994); *see also* 19 U.S.C. § 1516a(c)(3) (1994) (stating that if final disposition of an action brought under this section is not in harmony with the final published determination of the Court, the matter is to be remanded to the administering authority for correction).

Entries may, however, be liquidated pursuant to Commerce's original determination if those entries are made prior to an adverse decision by the Court of International Trade and if the liquidation is not enjoined. 19 U.S.C. § 1516a(c)(1) (1994); *see also NTN Bearing Corp. v. United States,* 8 Fed.Cir. (T) 26, 29, 892 F.2d 1004, 1006 (1989).

According to Commerce, the entries from the second and third periods of review are liquidated solely pursuant to 19 U.S.C. § 1516a(c)(1) during the pendency of an appeal. The appeal precludes the operation of 19 U.S.C. § 1516a(e) because "the final court decision in the action" will not have been rendered by the Federal Circuit. In effect, Commerce is arguing that because the decision in *Laclede* is not final for *all* parties, liquidation for those entries belonging to importers who are not party to the appeal, and that were entered prior to the Court of International Trade's judgment, should take place in accordance with Commerce's original determination. The Court rejects this argument under the facts of this case.

First, as noted above, this Court's authority to issue an injunction is expressly contemplated by the statute. 19 U.S.C. § 1516a(c)(1)-(2). Therefore, granting an injunction would not disturb the statutory scheme.

Second, the injunction is more in keeping with the outcome contemplated in *Timken.* According to *Timken,* the authority to liquidate subsequent entries pursuant to Commerce's original determination ceases once notice of the first decision by this Court *or* by the Court of Appeals for the Federal Circuit adverse to Commerce is published. *Timken,* 8 Fed.Cir. (T) at 33–5, 893 F.2d at 340–2; 19 U.S.C. § 1516a(c)(1). If a decision of the Court of International Trade is appealed, *Timken* instructs Commerce to suspend liquidation as to all future entries until a "conclusive" decision is rendered by the Federal Circuit. Suspension avoids any "yo-yo" effect caused by Commerce changing its liquidation rate between that provided for in Commerce's original determination, the Court of International Trade's judgment, and any subsequent decision of the Federal Cir-

cuit. *Timken,* 8 Fed.Cir. (T) at 35, 893 F.2d at 342. According to *Timken,* a "conclusive decision" is one that has conclusively decided the controversy and the decision can no longer be attacked, either collaterally or by appeal. *Timken,* 8 Fed.Cir. (T) at 32, 893 F.2d at 339. The Federal Circuit distinguished a "conclusive decision" from a "final decision" which means a final entered judgment which may be appealable. *Id.*

Commerce claims that it has complied with *Timken* by implementing this Court's judgment as to all future entries by adjusting the cash deposit rates in accordance with *Laclede. See* 60 Fed.Reg. 55,833 (1995).

However, under the circumstances of this case, there is no reason why this Court's judgment should not be given its full effect with respect to entries made *prior* to the Court of International Trade's decision which have been administratively suspended up until the time that requests for administrative review were withdrawn. Although *Timken* only dealt with entries made *subsequent* to the issuance of an judgment by the Court of International Trade, an injunction in this case would render results consistent with the policy underlying the decision in *Timken.*

*Timken* was concerned with avoiding the "yo-yo" effect that accompanies switching between Commerce's original determination, an amended determination approved by the Court of International Trade after a remand, and a possible subsequent decision by the Federal Circuit. In the present case, both Commerce and Shinho agreed at oral argument that the Court of International Trade's judgment is final with respect to Shinho. There are no appeals pending with respect to Shinho, although there are appeals pending with respect to other parties. The outcome of these appeals will not have any practical effect on Shinho. The time for appeal has run with respect to the judgement's effect on Shinho, thereby making it final and conclusive with respect to Shinho. *See Marin–Piazza v. Aponte–Roque,* 909 F.2d 35, 39 (1st Cir.1990) (stating that where some parties have appealed, and the time for appeal has run for the other parties, the inescapable consequence is that the judgment becomes final and conclusive with the respect to the non-appealing parties).

Because this Court's judgement is final and conclusive with respect to Shinho, there can be no "yo-yo" effect if Commerce applies the Court's judgment to all of Shinho's entries not yet liquidated. Indeed, failure to do so will result in a "yo-yo" effect because suspended entries made prior to this Court's judgment, but suspended until the filing of this motion, now will be liquidated alongside subsequent entries under two different rates. The rationale of *Timken* demands that Commerce be enjoined from liquidating at dual rates in this case. Granting the injunction would mean that Shinho is to receive the benefit of 19 U.S.C. § 1516a(e) for the liquidation of the entries made both prior to and subsequent to this Court's judgment in *Laclede.*

### D. Injunction

The Court now will consider whether injunction is appropriate under the facts of this case.

■ Commerce contends that injunction is inappropriate in the present case because the granting of an injunction is appropriate only where it maintains the status quo or concerns an existing right. *NTN Bearing Corp.,* 892 F.2d at 1006. Commerce argues that the Court would be creating a new right by granting Shinho's motion. The Court disagrees.

All of Shinho's rights were in existence before or by reason of this Court's judgment in *Laclede.* Shinho now is simply asking that this Court's judgment be given its full effect with respect to it. No new rights are created by the Court's enforcement of its judgment.

■ The Court will therefore proceed to apply the traditional four prong test for a request for injunctive relief. First, the Court finds that Shinho faces immediate and irreparable harm because additional duties totalling hundreds of thousands of dollars may be assessed on entries made during the second and third review periods. In their briefs and at oral argument, Commerce made the argument that it has the authority under

19 U.S.C. § 1516a(c)(1) to order liquidation of the subject entries, during the time of the appeal, in accordance with its original determination even though it has been found to be unlawful by the Court of International Trade. This position puts Shinho at risk that Commerce will impose duties on Shinho which are non-recoverable. Under *Zenith Radio Corp. v. United States,* 1 Fed.Cir. (T) 74, 80, 710 F.2d 806, 810 (1983), liquidation of entries extinguishes the underlying res and the accompanying cause of action, stripping this Court of the ability to provide a remedy to an importer.

Second, there is a compelling public interest in having Commerce promptly comply with the judgments of the Court of International Trade as to all entries not subject to appeal. The argument presented by Commerce that it may continue to impose "unlawful" duties pursuant to 19 U.S.C. § 1516a(c)(1) under the circumstances of this case lacks any basis in public policy. Third, the Court determines that Shinho is most certain to succeed in obtaining duties pursuant to *Laclede,* once the pending appeals are resolved by operation of 19 U.S.C. § 1516a(e). Finally, Commerce has failed to show any hardship to it by having to order the liquidation of these entries in accordance with the Court's decision. Accordingly, an injunction is appropriate in this case.

## CONCLUSION

■ Where a judgment involves multiple parties, the Court of International Trade's judgment pertaining to parties not subject to appeal will be considered "final" and "conclusive" with respect to the entries of those parties not yet liquidated at the time of the judgment, thereby immediately extending operation of 19 U.S.C. § 1516a(e) to these entries. Commerce should promptly comply with an order of this Court to the extent that it is not the subject of appeal.

For the foregoing reasons, it is hereby:

**ORDERED** that Shinho's motion to enjoin Commerce from ordering liquidation of the subject entries in accordance with their original determination is granted; and it is further

**ORDERED** that any liquidation of the subject entries with respect to Shinho shall be in accordance with *Laclede Steel Co. v. United States,* 19 CIT ——, Slip Op. 95–144, 1995 WL 476716 (Aug. 11, 1995).