**Slip Op. 04-77**

**United States Court of International Trade**

JILIN HENGHE PHARMACEUTICAL CO.
and JILIN PHARMACEUTICAL USA,

                Plaintiffs,

       v.

UNITED STATES,

                Defendant.

Before: Pogue, Judge

Court No. 04-00151

[Defendant's motion to dismiss denied; declaratory judgment entered for Plaintiffs.]

Decided: June 29, 2004

White & Case, LLP (William J. Clinton, Adams Lee, and Kathleen D. Wallender) for Plaintiffs.

Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, Jeanne E. Davidson, Deputy Director, Ada E. Bosque, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Elizabeth Cooper Doyle, Attorney, Of Counsel, Office of Chief Counsel for Import Administration, U.S. Department of Commerce, for Defendant.

**OPINION**

**Pogue, Judge:** In this action, Plaintiffs Jilin Henghe

Pharmaceutical Co. and Jilin Pharmaceutical USA ("Jilin") challenge

the validity of liquidation[1] instructions issued by the United States Department of Commerce ("Commerce") to the United States Bureau of Customs and Border Protection ("Customs")[2] regarding Jilin's entries of bulk aspirin from China.

Before the Court is Plaintiffs' motion requesting mandamus relief, which the parties have agreed to treat as a motion for declaratory relief. Defendant has filed a motion to dismiss, alleging a lack of subject matter jurisdiction, that its own actions were in accordance with law, and that the equitable relief sought by Plaintiffs is inappropriate. By agreement of the parties, the Court has issued a preliminary injunction temporarily enjoining liquidation of Plaintiffs' entries and expediting consideration of this matter.

Because this Court has jurisdiction to consider Plaintiffs' challenge under 28 U.S.C. § 1581(i) (2000), and because Commerce's liquidation instructions are not in accordance with law, the Court enters a declaratory judgment for Plaintiffs.

_____

[1]Liquidation is defined as "the final computation or ascertainment of the duties . . . or drawback accruing on an entry" of imported merchandise. 19 C.F.R. § 159.1 (2003).

[2]Effective March 1, 2003, the United States Customs Service was renamed the United States Bureau of Customs and Border Protection. See Homeland Security Act of 2002, Pub. L. No. 107-296 § 1502, 2002 U.S.C.C.A.N. (116 Stat.) 2135, 2308; Reorganization Plan Modification for the Department of Homeland Security, H.R. Doc. No. 108-32, at 4 (2003).

## BACKGROUND

Commerce's liquidation instructions seek to impose antidumping duties on Plaintiffs' entries pursuant to an antidumping order which was invalidated, with regard to Plaintiffs, by the Court's decision in Rhodia, Inc. v. United States, 26 CIT __, 240 F. Supp. 2d 1247 (2002) ("Rhodia II"). Specifically, Commerce instructed Customs to impose antidumping duties on entries made prior to the Court's decision in Rhodia II but which remained unliquidated as of the date of the "Timken" notice of that order.[3]

The Court of Appeals for the Federal Circuit affirmed the Court's decision in Rhodia II on October 14, 2003. See Stmt of Relevant Agreed-Upon Facts para. 9 ("Jt. Stmt").

The administrative background of this dispute dates to May 25, 2000, when Commerce published notice of the final determination in Bulk Aspirin from the People's Republic of China, 65 Fed. Reg. 33,805 (Dep't Commerce May 25, 2000) (notice of final determination of sales at less than fair value), as amended, 65 Fed. Reg. 39,598 (Dep't Commerce June 27, 2000) (notice of amended final determination of sales at less than fair value). Commerce's final determination established dumping margins for a number of producers

---

[3]A "Timken notice" is so called after the result in Timken Co. v. United States, 893 F.2d 337 (Fed. Cir. 1990). That case held that 19 U.S.C. § 1581a(e) requires Commerce to publish a notice in the Federal Register within ten days of issuance of a court decision contrary to a determination by Commerce. See Timken Co. v. United States, 893 F.2d at 340.

of bulk aspirin, including Jilin.   Jilin's initial cash-deposit rate[4] was set at 10.85 percent.   See Bulk Aspirin from the People's Republic of China, 65 Fed. Reg. at 39,599.   Commerce published notice of the antidumping duty order on bulk aspirin from China on July 11, 2000.   Bulk Aspirin from the People's Republic of China, 65 Fed. Reg. 42,673, 42,674 (Dep't Commerce, July 11, 2000) (notice of antidumping duty order).   Jilin appealed the final determination and antidumping duty order, and Jilin's appeal was consolidated into Rhodia, Inc. v. United States, 25 CIT 1278, 1278, 185 F. Supp. 2d 1343, 1345 (2001) ("Rhodia I").   The Court's opinion in that case remanded the final determination to Commerce for further consideration.   See Rhodia I, 25 CIT at 1293, 185 F. Supp. 2d at 1358.   On remand, Commerce found that Jilin's duty margin was de minimis, and that Jilin should be excluded from the dumping order on bulk aspirin from the People's Republic of China.   See Jt. Stmt at para. 5.   The Court upheld Commerce's determination on remand. See Rhodia II, 26 CIT at __, 240 F. Supp. 2d at 1255.   Pursuant to the decision in Rhodia II, Commerce issued its "Timken" notice. See Bulk Aspirin from the People's Republic of China, 67 Fed. Reg. 61,315, 61,315-16 (Dep't Commerce Sept. 30, 2002) (notice of court

---

[4]In general, following an antidumping order, Customs collects duties at the "cash deposit rate" in effect at the time of entry. See 19 U.S.C. § 1673d(c)(1)(B)(ii).   During administrative review proceedings following the anniversary date of an order, this rate may be revised or changed, and the amount of actual antidumping duties assessed.   See 19 U.S.C. § 1675(a)(1).

decision and suspension of liquidation) ("the Timken notice").

In addition, during the pendency of the two Rhodia cases, Jilin participated in two administrative reviews of the dumping order on bulk aspirin from the People's Republic of China. See Jt. Stmt at para. 12. The results of the two reviews, however, were not published until after the decision in Rhodia II was issued. See Jt. Stmt at paras. 17, 30. With regard to both the first and second administrative reviews of the order, covering the periods from July 6, 2000 through June 30, 2001, and July 1, 2001 through June 30, 2002, Commerce found that Jilin's dumping margin was de minimis or zero. See Bulk Aspirin from the People's Republic of China, 68 Fed. Reg. 6,710, 6,711 (Dep't Commerce Feb. 10, 2003) (final results of antidumping duty review); Bulk Aspirin from the People's Republic of China, 68 Fed. Reg. 48,337, 48,338 (Dep't Commerce Aug. 13, 2003) (final results of antidumping duty review).

Jilin was originally a participant in a third administrative review, as well, but the request for review as to Jilin was withdrawn. See Jt. Stmt at para. 38.[5] Commerce thereafter rescinded the third administrative review as to Jilin. See Bulk Aspirin from the People's Republic of China, 69 Fed. Reg. 5,126, 5,127 (Dep't Commerce Feb. 3, 2004) (notice of partial rescission of antidumping duty administrative review).

_____

[5]This withdrawal followed shortly after the decision of the Court of Appeals of the Federal Circuit affirming Rhodia II.

On February 12, 2004, Commerce issued the liquidation instructions in dispute here, directing Customs to liquidate Jilin's entries of bulk aspirin made between July 1, 2002 and September 29, 2002, the period between the end of the second review and Commerce's publication of the Timken notice of judgment in Rhodia II.[6]  See Jt. Stmt at para. 40.  Commerce instructed Customs to liquidate Jilin's entries during this period at the cash-deposit rate that was in effect at the time of entry, i.e., the rate set in the final administrative determination and antidumping order discredited in Rhodia II.  See Jt. Stmt at para. 43.

**STANDARD OF REVIEW**

While jurisdiction in a case challenging the validity of Commerce's liquidation instructions is provided by 28 U.S.C. § 1581(i), the cause of action, in such a case arises from the Administrative Procedure Act ("APA").  See 28 U.S.C. § 2640(e); Shinyei Corp. of Am. v. United States, 355 F.3d 1297, 1312 (Fed. Cir. 2004).  The APA provides that a court may set aside an agency action if it is "arbitrary, capricious, an abuse of discretion, or

---

[6]Plaintiff's complaint also challenges liquidation instructions regarding entries made during the period of the first and second administrative reviews, but Plaintiff subsequently voluntarily dismissed its case as to these instructions following resolution of the issues relating to them by the parties.  See Compl. of Jilin at para. 23; Pl.'s Mot. for Voluntary Dismissal in Part and to Amend the Preliminary Injunction at 1.

otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

Commerce's liquidation instructions are not subject to deference under Chevron U.S.A. Inc. v. Natural Res. Def. Council, 467 U.S. 837 (1984).  The instructions do not contain any statutory interpretation; moreover, the issuance of liquidation instructions is not subject to any formal hearing; nor are notice and comment procedures afforded.  See United States v. Mead Corp., 533 U.S. 218, 229-30 (2001).  The instructions are only binding on the party for which they were issued, Plaintiffs.  See id. at 232. Accordingly, there is nothing on the record here which would indicate any Congressional intent to give Commerce's liquidation instructions the force of law.

**DISCUSSION**

The Court has consolidated its consideration of Defendant's motion to dismiss with the merits of the case.  Accordingly, this opinion will first discuss subject matter jurisdiction, then the question of whether Commerce acted in accordance with law, and finally the question of what relief is appropriate here.

A. Subject Matter Jurisdiction

Defendant's challenge to subject matter jurisdiction rests on two arguments.  The first argument is that Plaintiffs should have brought their complaint under 28 U.S.C. § 1581(c) rather than 28

U.S.C. § 1581(i).  See Def.'s Mot. Dismiss & Opp'n to Request for Injunctive & Mandamus Relief at 16 ("Def.'s Mot. Dismiss"). Second, Defendant claims that Plaintiffs' failure to bring a § 1581(c) challenge to Defendant's published notice of the Court's decision in Rhodia II at the time of the notice's publication deprives Plaintiffs of the right to bring suit now.  See Def.'s Mot. Dismiss at 20.  The Court will address each argument in turn.

First, Defendant argues, correctly, that jurisdiction under 28 U.S.C. § 1581(i), the Court's residual grant of jurisdiction, may be invoked only if no other grant of jurisdiction could have been invoked to provide an adequate remedy.  See Def.'s Mot. Dismiss at 14.  Defendant further argues that Plaintiffs could have challenged Commerce's decision to give Rhodia II only prospective application by filing under 28 U.S.C. § 1581(c), which grants this Court jurisdiction over, among other things, disputes arising out of antidumping duty orders and the reviews thereof.[7]  See Def.'s Mot. Dismiss at 16; see also 28 U.S.C. § 1581(c).  However, the Court of Appeals for the Federal Circuit recently concluded that jurisdiction here is proper under 28 U.S.C. § 1581(i), the statutory grant claimed by Plaintiffs.  See Shinyei Corp. of Am. v.

_____

[7]There is no reason to believe that Plaintiffs could have challenged the liquidation instructions under 28 U.S.C. §1581(a). That provision allows for protests of decisions of the Customs Service.  See 28 U.S.C. §1581(a).  As the liquidation instructions at issue here were issued by Commerce, rather than Customs, Plaintiffs could not have properly filed suit under § 1581(a).

United States, 355 F.3d at 1305 (citing Consol. Bearings Co. v. United States, 348 F.3d 997, 1002 (Fed. Cir. 2003) ("[A]n action challenging Commerce's liquidation instructions is not a challenge to the final results, but a challenge to the 'administration and enforcement' of those final results. Thus, Consolidated challenges the manner in which Commerce administered the final results. Section 1581(i)(4) grants jurisdiction to such an action.")).

Despite the holding in Shinyei Corp. of Am., Defendant argues that this Court should be deprived of jurisdiction over Plaintiffs' claim because Plaintiffs' failed to challenge Commerce's notice of the decision in Rhodia II, which Commerce published on September 30, 2002. See Def.'s Mot. to Dismiss at 20. Commerce argues that this notice made Plaintiffs aware that Commerce intended to apply the Rhodia II decision only to entries of aspirin made on or after September 29, 2002. See id. Defendant further argues that Plaintiffs had an opportunity to challenge this notice under 19 U.S.C. § 1581(c). See Def.'s Mot. Dismiss at 20. By failing to challenge the published notice at the time of its publication, Defendant argues, Plaintiffs have lost the right to file suit under 28 U.S.C. § 1581(c). See Def.'s Mot. Dismiss at 21-22. However, because, had Plaintiff timely challenged the notice, review under § 1581(c) would have been available, review under § 1581(i) is now foreclosed. See Def.'s Mot. Dismiss at 22.

Commerce's argument is unpersuasive. The Timken notice was

not sufficient to apprise Plaintiffs of Commerce's intention to limit the decision in Rhodia II to prospective application, and therefore could not give rise to an opportunity to challenge that notice under 28 U.S.C. § 1581(c).

The Timken notice stated, in relevant part, that Commerce "will instruct [Customs] to . . . liquidate relevant entries covering the subject merchandise effective September 30, 2002, in the event that the CIT's ruling is not appealed, or if appealed and upheld by the Court of Appeals for the Federal Circuit." Bulk Aspirin from the People's Republic of China, 67 Fed. Reg. 61,315, 61,316 (Dep't Commerce Sept. 30, 2002) (notice of court decision and suspension of liquidation). The statement appears, taken at face value, to state only that in the absence of an appeal, or in the event of an affirmance, Commerce would direct Customs to begin liquidation on, and effective as of, September 30, 2002. It does not state that entries made before that date and remaining unliquidated as of that date would liquidate differently from those made on or after September 30, 2002.[8]

---

[8]Defendant also argues that its notice of amended final determination published on December 30, 2003 provided notice of the determination to prospectively apply Rhodia II. See Def.'s Mot. Dismiss at 20. The notice states that "[Commerce] will instruct [Customs] to liquidate entries from Jilin without regard to antidumping duties, because Jilin is excluded from the antidumping order, effective September 30, 2002, the date on which [Commerce] published a notice of the Court decision." Bulk Aspirin from the People's Republic of China, 68 Fed. Reg. 75,208, 75,210 (Dep't Commerce Dec. 30, 2003) (notice of amended final determination and amended order pursuant to final court decision)

Moreover, even had the Timken notice been sufficient to put Plaintiffs on notice of Commerce's determination to apply Rhodia II prospectively, it is far from clear whether 28 U.S.C. § 1581(c) would have furnished jurisdiction for Plaintiff to make a challenge.  Title 28 U.S.C. § 1581(c) grants jurisdiction over actions commenced under 19 U.S.C. § 1516a(a), which in turn provides for judicial review for certain antidumping and countervailing duty determinations described in 19 U.S.C. § 1516a(a)(2)(B).  Section 1516a(a)(2)(B) does not provide for judicial review of Commerce's notices of published decisions. See 19 U.S.C. § 1516a(a)(2)(B).  Nor does the substantive determination to apply Rhodia II prospectively appear to be reviewable under § 1516a(a)(2)(B).  Id.

Therefore, in accordance with the holding in Shinyei Corp. of Am., jurisdiction over Plaintiffs' challenge to Commerce's liquidation instructions is appropriate under 28 U.S.C. § 1581(i). Moreover, Commerce's published notice of the decision in Rhodia II gave notice of no determination that falls within the category of decisions that trigger a right of judicial review under 19 U.S.C. § 1516a.

---

(internal citation omitted).  This notice, like the Timken notice, does not state that entries made before September 30, 2002, but remaining unliquidated after that date, will be liquidated in accordance with the discredited administrative determination.

B. <u>Whether or Not Commerce Acted In Accordance With Law</u>

As subject matter jurisdiction has been properly invoked, the Court must determine whether Commerce, in issuing its liquidation instructions, acted in a manner that was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); <u>see</u> 28 U.S.C. § 2640(e).

Defendant argues that its liquidation instructions are in accordance with law because liquidation at the cash-deposit rate is proper under two statutory provisions dealing with liquidation in accordance with court decisions: 19 U.S.C. § 1516a(c)(1) and 19 U.S.C. § 1516a(e).[9] Defendant argues that 19 U.S.C. § 1516a(c)(1)

---

[9]Title 19 U.S.C. § 1516a(c)(1) states:

<u>(c) Liquidation of entries</u>

<u>(1) Liquidation in accordance with determination</u>

Unless such liquidation is enjoined by the court under paragraph (2) of this subsection, entries of merchandise of the character covered by a determination of the Secretary, the administering authority, or the Commission contested under subsection (a) of this section shall be liquidated in accordance with the determination of the Secretary, the administering authority, or the Commission, if they are entered, or withdrawn from warehouse, for consumption on or before the date of publication in the Federal Register by the Secretary or the administering authority of a notice of a decision of the United States Court of International Trade, or of the United States Court of Appeals for the Federal Circuit, not in harmony with that determination. Such notice of a decision shall be published within ten days from the date of the issuance of the court decision.

requires that Plaintiffs' entries be "liquidated in accordance with the determination of [Commerce], if they are entered . . . on or before the date of publication in the Federal Register by [Commerce] of a notice of a decision of the United States Court of International Trade . . . not in harmony with that determination," even though Commerce's underlying antidumping order, which serves as the basis for those liquidations, has been invalidated by the Court.  19 U.S.C. § 1516a(c)(1); see Def.'s Mot Dismiss at 27-29. Defendant argues that 19 U.S.C. § 1516a(c)(1) allows Commerce to

---

19 U.S.C. § 1516a(c)(1).

Title 19 U.S.C. § 1516a(e) states:

(e) Liquidation in accordance with final decision

If the cause of action is sustained in whole or in part by a decision of the United States Court of International Trade or of the United States Court of Appeals for the Federal Circuit--
(1) entries of merchandise of the character covered by the published determination of the Secretary, the administering authority, or the Commission, which is entered, or withdrawn from warehouse, for consumption after the date of publication in the Federal Register by the Secretary or the administering authority of a notice of the court decision, and
(2) entries, the liquidation of which was enjoined under subsection (c)(2) of this section, shall be liquidated in accordance with the final court decision in the action. Such notice of the court decision shall be published within ten days from the date of the issuance of the court decision.

19 U.S.C. § 1581a(e).

liquidate entries made on or before the September 29, 2002 publication of the notice of decision in Rhodia II, but remaining unliquidated after the publication of the notice of decisions, in accordance with the determination discredited in Rhodia II. See Def.'s Mot Dismiss at 27-29. Defendant further argues that had Plaintiffs desired to ensure that entries made before this date would not be so liquidated, Plaintiffs should have filed an injunction against liquidation at the outset of Rhodia II, or pending a challenge to the Timken notice. Id. at 30-31.

Defendant's argument would carry more weight were this case dealing with entries actually liquidated during the pendency of the two Rhodia suits. Liquidations made during the pendency of litigation deprive a plaintiff of relief under § 1581(c), although litigation may still be possible under § 1581(i). See Shinyei Corp. of Am. v. United States, 355 F.3d at 1312. Moreover, it seems clear that Commerce may order liquidation of entries in accordance with its own determination, in the absence of an injunction, until a contrary court decision is reached. See Timken Co. v. United States, 893 F.2d 337, 342 (Fed. Cir. 1990). However, during the pendency of the Rhodia cases, none of Jilin's entries of aspirin were liquidated.[10]

_____

[10]During the periods covered by the first and second administrative review, liquidation was suspended by Commerce in accordance with the procedures governing administrative reviews. Moreover, when these reviews were completed in 2003, both found that Jilin's dumping rate was de minimis or zero. See Bulk

Nevertheless, Commerce argues that all entries made between July 1, 2002 and September 29, 2002 should be liquidated at the cash-deposit rate.  See Def.'s Mot. Dismiss at 27-29.  Commerce cites various cases it claims stand for the proposition that, absent an injunction against such liquidation, 19 U.S.C. § 1516a(c)(1) and 19 U.S.C. § 1516a(e) allow entries remaining unliquidated at the time Commerce publishes a notice of decision to be liquidated at the cash-deposit rate, rather than in accord with a contrary court decision.  See Def.'s Mot Dismiss at 28-30.[11] However, all the cited cases predate the Court's determination in Laclede Steel Co. v. United States, 20 CIT 712, 928 F. Supp. 1182 (1996), aff'd, 92 F.3d 1206 (Fed. Cir. 1996), a case presenting facts similar to the ones before the Court here.  Read in light of Laclede Steel Co., Commerce's cited cases are consistent with

_____

Aspirin from the People's Republic of China, 68 Fed. Reg. 6,710, 6,711 (Dep't Commerce Feb. 10, 2003) (final results of antidumping duty review); Bulk Aspirin from the People's Republic of China, 68 Fed. Reg. 48,337, 48,338 (Dep't Commerce Aug. 13, 2003) (final results of antidumping duty review).

Therefore, the only time period in which Customs could have liquidated entries was between July 1, 2002 and September 29, 2002.  Commerce, however, failed to liquidate any of Jilin's entries during this time, due to the fact that those entries were suspended under the procedures for the third administrative review, which was later rescinded as to Jilin's entries.  See Bulk Aspirin from the People's Republic of China, 69 Fed. Reg. 5,126, 5,127 (Dep't Commerce Feb. 3, 2004) (notice of partial rescission of antidumping duty administrative review).

[11]Defendant's argument ignores the effect of its own suspension of liquidation during the administrative reviews.  See supra note 10.

Plaintiffs' claim for relief here.

In Laclede Steel Co., the plaintiff had obtained, on remand, a dumping margin which was lower than Commerce's original antidumping duty determination. Laclede Steel Co. v. United States 20 CIT at 713, 928 F. Supp. at 1184. During the pendency of the litigation, plaintiff participated in administrative reviews, but withdrew its requests for review shortly after the contrary court decision issued. Id. Finding that its entries made during the periods of administrative review were to be subject to liquidation at the higher rate determined by Commerce before the contrary court decision issued, plaintiff sought injunctive relief in this Court. Id.

The Court retroactively granted the motion for injunctive relief to prohibit liquidation of entries made during the periods of administrative review, but before the contrary court decision, from being liquidated at the higher rate. Laclede Steel Co. v. United States, 20 CIT at 718, 928 F. Supp. at 1188. The Court held that 19 U.S.C. § 1516a(c)(2)[12] expressly contemplates injunctive

---

[12]Title 19 U.S.C. § 1516a(c)(2) states:

(2) Injunctive relief

In the case of a determination described in paragraph (2) of subsection (a) of this section by the Secretary, the administering authority, or the Commission, the United States Court of International Trade may enjoin the liquidation of some or all

relief.  Laclede Steel Co., 20 CIT 715-16, 928 F. Supp. at 1186.

Moreover, the Court held that an injunction would serve the

interests outlined in Timken Co. v. United States, 893 F.2d 337

(Fed. Cir. 1990).  See Laclede Steel Co. v. United States, 20 CIT

at 716, 928 F. Supp. at 1186-87.

In Timken Co., the Court of Appeals for the Federal Circuit

stated that when this Court reaches a decision contrary to the

agency's determination, under 19 U.S.C. § 1516a(c)(1), "liquidation

should no longer take place in accordance with Commerce's

determination."  Timken Co. v. United States, 893 F.2d 337, 341

(Fed. Cir. 1990).  This "no longer" appears to foreclose the

argument that, after the decision contrary to the agency's

determination becomes final, further liquidation may still take

place in accordance with that invalidated determination, regardless

of when the actual entries were made.  As the Laclede Steel Co.

Court explained, Timken Co. was concerned with avoiding the "yo-yo"

effect resulting from liquidations based on an agency

determination, a court determination, a determination on appeal,

and back.  See Laclede Steel Co. v. United States, 20 CIT at 716-

---

entries of merchandise covered by a determination of
the Secretary, the administering authority, or the
Commission, upon a request by an interested party
for such relief and a proper showing that the
requested relief should be granted under the
circumstances.

19 U.S.C. § 1516a(c)(2).

17, 928 F. Supp. at 1187; see also Timken Co. v. United States, 893 F.2d at 342. The Court in Laclede Steel Co. held that injunctive relief was an appropriate method for defeating the "yo-yo" effect. See Laclede Steel Co. v. United States, 20 CIT at 716-17, 928 F. Supp. at 1187. While the case at bar is very similar on its facts to Laclede Steel Co., the Court must evaluate the situation anew, in light of the holding in Shinyei Corp of Am. v. United States, 355 F.3d 1297, 1312 (Fed. Cir. 2004).

As noted above, in Shinyei Corp. of Am., the Court of Appeals for the Federal Circuit recognized that the APA provides a cause of action for a challenge to the validity of Commerce's liquidation instructions. See 355 F.3d at 1312. Under the standard of review established by the APA, an agency action must be "in accordance with law." 5 U.S.C. § 706(2)(A). An agency's action, however, is not in accordance with law if it conflicts with either a statute or a binding court decision. The decision in Rhodia II was final and conclusive as to whether Jilin was properly included in the antidumping order on bulk aspirin from China; once that decision became final, Commerce was bound to follow it.

Accordingly, in light of Shinyei Corp. of Am.'s determination that liquidation instructions must pass APA review, the Court finds that the liquidation instructions at issue here were not in accordance with law. The instructions do not reflect the Court's determination in Rhodia II. Moreover, 19 U.S.C. § 1516a(c)(1) and

19 U.S.C. § 1516a(e) cannot be read to legitimate the liquidation of Jilin's entries under Commerce's now discredited determination. To read the statutory provisions in that way fails to give force and effect to this Court's decisions, in that it allows liquidations to continue under a legally invalid determination. Once Commerce's final antidumping determination has been invalidated, it cannot serve as a legal basis for the imposition of antidumping duties on Plaintiffs' entries.  Second, Commerce's reading is contrary to Timken Co.'s counsel against the "yo-yo" effect.[13]  Third, such a reading runs counter to Timken Co.'s assertion that 19 U.S.C. § 1516a(c)(1) reflects a presumption of correctness regarding Commerce's determination, but that "if the CIT or [the Court of Appeals for the Federal Circuit] renders a decision which is contrary to that determination, the presumption of correctness disappears."  See Timken Co. v. United States, 893 F.2d at 341-42.  Along with the presumption, Commerce's ability to order liquidation in accordance with its determination must also disappear.

Thus, while issuance of an injunction, as in Laclede Steel Co., would resolve this dispute, such an injunction is unnecessary

_____

[13]In the absence of some form of equitable relief, a "yo-yo" effect will certainly result from Commerce's liquidation instructions:  Jilin's July 1, 2002 -- September 29, 2002 entries would liquidate alongside previous and subsequent entries, but at a different rate.  Cf. Laclede Steel Co. v. United States, 20 CIT at 717, 928 F. Supp. at 1187.

in light of <u>Timken Co.</u> and <u>Shinyei Corp. of Am.</u>  Here the Court is faced not only with a contrary court decision, but with one that is final and conclusive as to Jilin's entries.  Moreover, because this action is predicated upon the APA, the Court need not look to 19 U.S.C. § 1516a(c)(2) alone in search of a remedy.  While injunctive relief would certainly preclude harm to Plaintiffs, the APA does not limit the Court to such relief.  <u>See</u> 5 U.S.C. § 702; <u>see also</u> 28 U.S.C. § 1585, 28 U.S.C. § 2643(c)(1).[14]  The only question

_____

[14]Title 5 U.S.C. § 702 states:

> A person suffering legal wrong because of agency
> action, or adversely affected or aggrieved by agency
> action within the meaning of a relevant statute, is
> entitled to judicial review thereof. An action in a
> court of the United States seeking relief other than
> money damages and stating a claim that an agency or
> an officer or employee thereof acted or failed to
> act in an official capacity or under color of legal
> authority shall not be dismissed nor relief therein
> be denied on the ground that it is against the
> United States or that the United States is an
> indispensable party. The United States may be named
> as a defendant in any such action, and a judgment or
> decree may be entered against the United States:
> <u>Provided</u>, That any mandatory or injunctive decree
> shall specify the Federal officer or officers (by
> name or by title), and their successors in office,
> personally responsible for compliance. Nothing
> herein (1) affects other limitations on judicial
> review or the power or duty of the court to dismiss
> any action or deny relief on any other appropriate
> legal or equitable ground; or (2) confers authority
> to grant relief if any other statute that grants
> consent to suit expressly or impliedly forbids the
> relief which is sought.

5 U.S.C. § 702.  In light of the decision in <u>Timken Co.</u>, the Court does not read 19 U.S.C. § 1516a(c)(1) and 19 U.S.C. §

remaining, then, is that of what relief is appropriate under these

facts.

    C.  What Relief is Appropriate

    Declaratory relief is a simple and efficient vehicle for

ensuring the same result reached in Laclede Steel Co.: liquidation

of Plaintiffs' entries in accord with the Court's final decision.[15]

---

1516a(e) to impliedly forbid relief, nor does the Court read 19
U.S.C. § 1516a(c)(2)'s provision for injunctive relief to
impliedly forbid declaratory relief under the APA.  Moreover,
declaratory relief is among this Court's powers by statutory
grant.  Title 28 U.S.C. § 1585 states:

> The Court of International Trade shall possess all
> the powers in law and equity of, or as conferred by
> statute on, a district court of the United States.

28 U.S.C. § 1585.  Title 28 U.S.C. § 2643(c)(1) provides, in
relevant part:

> [T]he Court of International Trade may . . . order
> any other form of relief that is appropriate in a
> civil action, including, but not limited to,
> declaratory judgments, orders of remand,
> injunctions, and writs of mandamus and prohibition.

28 U.S.C. § 2643(c)(1).


    [15]Although the Court grants declaratory relief in this case,
it should be noted that Plaintiffs would likely prevail in a
claim for injunctive relief as well, were declaratory relief
unavailable.  Defendant disputes this, but its arguments are to
no avail.
    First, Defendant argues that because its published notice of
court decision was sufficient to apprise Plaintiffs of the
prospective application of Rhodia II, Plaintiffs could have filed
for relief under 28 U.S.C. § 1581(c) at that time.  See Def.'s

Mot. Dismiss at 31-32.  As the Court has already explained, that notice was not sufficient to apprise Plaintiffs of Defendant's determination.  Therefore, failure to file suit to challenge this determination at the time of the notice's publication does not show that Plaintiffs failed to avail themselves of an adequate alternative remedy.

Second, Defendant argues that because Jilin has "slept on its rights," no irreparable harm can result from the liquidation of the July 1, 2002 -- September 29, 2002 entries of Jilin's merchandise.  See Def.'s Mot. Dismiss at 32.  Jilin, however, does not appear to have slept on its rights in this case, challenging the liquidation instructions immediately after their release.  Because the Timken notice published by Defendant was not sufficient notice of the decision to apply Rhodia II prospectively, failure to sue upon that notice cannot support a charge that Jilin has slept on its rights.  Moreover, if Jilin's goods are liquidated in accordance with the liquidation instructions, Jilin will lose the benefit of the decision in Rhodia II as it relates to those goods and be forced to pay the 10.85 percent cash-deposit rate on those entries, rather than have them assessed at zero.  Such financial harm has been considered sufficient to show irreparable harm for the purposes of injunctive relief in this Court.  See Laclede Steel Co. v. United States, 20 CIT 712, 717-18, 928 F. Supp. 1182, 1186-87 (1996) (granting an injunction where the only harm plaintiff would suffer was liquidation of its entries at a higher rate).

Third, Defendant argues that the public interest would suffer were the relief granted and that the balance of hardships favors the government.  See Def.'s Mot. Dismiss at 34-35. Defendant's arguments on these points, however, are directed toward Plaintiff's challenge to the liquidation instructions regarding entries Jilin made between June 6, 2000 and June 30, 2002.  See id.  This portion of the litigation has since been voluntarily dismissed by Plaintiff, following the resolution of the issues presented therein.  See Pl.'s Mot. for Voluntary Dismissal in Part and to Amend the Preliminary Injunction at 1. Moreover, it appears to the Court that there can be no harm to the public, as the case involves only Jilin's entries over a limited time period, and that, although an injunction would require new liquidation instructions to be issued, because liquidation of the entries at issue is already enjoined pursuant to the Court's preliminary injunction, the hardships to be suffered by the government are few.

Fourth, a permanent injunction would appear to address the "yo-yo" effect which the Court of Appeals for the Federal Circuit found distasteful in Timken Co.  As discussed above, if no

Under the Declaratory Judgment Act, 28 U.S.C. § 2201,[16] the only jurisdictional prerequisite for this Court's granting of declaratory relief is the existence of an actual controversy. The parties have stipulated that Jilin did make entries of bulk aspirin from China during the time period covered by the liquidation instructions. Therefore, it is clear that there is an actual controversy in this case. Moreover, the existence of an alternative adequate remedy, such as injunctive relief, is no bar

_____

injunction were to issue, the entries at issue here would liquidate simultaneously with preceding and subsequent entries, but at a different rate from those entries. Moreover, this Court has used a permanent injunction to resolve this difficulty in a past case presenting very similar facts. See Laclede Steel Co. v. United States, 20 CIT at 718, 928 F. Supp. at 1188.

    The Court notes, however, that injunctive relief is unnecessary in this case. Where the court can protect the interests of a federal plaintiff by entering a declaratory judgment, "the stronger injunctive medicine [appears to] be unnecessary," especially in light of the view that "ordinarily, . . . the practical effect of [injunctive and declaratory] relief will be virtually identical." Doran v. Salem Inn, Inc., 422 U.S. 922, 931 (1975) (stating that at the conclusion of a successful federal challenge to a state statute or local ordinance, a district court can "generally protect the interests of a federal plaintiff by entering a declaratory judgment," thereby rendering the extraordinary relief afforded by an injunction unnecessary) (second alteration in original) (internal citation omitted).

    [16]Title 28 U.S.C. § 2201 states, in relevant part:

        (a) In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201.

to relief under the Declaratory Judgment Act.  <u>See</u> 28 U.S.C. §

2201.  Finally, 19 U.S.C. § 1516a(c)(2) does not operate to limit

this Court to injunctive relief, as the case at bar was brought

under 28 U.S.C. § 1581(i), rather than as a § 1516a action under 28

U.S.C. § 1581(c).  <u>See</u> <u>Shinyei Corp. of Am.</u>, 355 F.3d at 1307-10;

<u>see</u> <u>also</u> 28 U.S.C. § 1585, 28 U.S.C. § 2643(c)(1).


**CONCLUSION**

Declaratory judgment is within the power of this Court, and is

a simple and effective method of resolving the instant case.

Commerce's liquidation instructions are not in accordance with law.

Commerce is required to issue liquidation instructions in

accordance with the opinion of this Court in <u>Rhodia II</u>.  Therefore,

declaratory judgment will be entered for Plaintiffs.


 /s/ Donald C. Pogue
Donald C. Pogue
Judge


Dated:    June 29, 2004
          New York, New York

ERRATUM

Jilin Henghe Pharmaceutical Co. v. United States, Court No. 04-00151, Slip Op. 04-77, dated
June 29, 2004.

Page 6, note 6:     The first sentence should read: "Plaintiff's complaint also challenges
                    liquidation instructions concerning entries made during the first and
                    second administrative reviews, but, following the parties' resolution of the
                    issues relating to these entries, Plaintiff subsequently voluntarily dismissed
                    its challenge regarding them, except with respect to a single entry, No.
                    D09-0929517-8, which Customs indicated could still be liquidated at a
                    non-zero rate."

Page 14, note 10:   The note should read: "Liquidation of Jilin's entries through September
                    29, 2002 was suspended  under the procedures for the three administrative
                    reviews.  See Bulk Aspirin from the People's Republic of China, 68 Fed.
                    Reg. 6,710, 6,711 (Dep't Commerce Feb. 10, 2003) (final results of
                    antidumping duty review),  Bulk Aspirin from the People's Republic of
                    China, 68 Fed. Reg. 48,337, 48,338 (Dep't Commerce Aug. 13, 2003)
                    (final results of antidumping duty review), Bulk Aspirin from the People's
                    Republic of China, 69 Fed. Reg. 5,126, 5,127 (Dep't Commerce Feb. 3,
                    2004) (notice of partial rescission of antidumping duty administrative
                    review)."

Page 15:            The first sentence should read: "Nevertheless, Commerce argues that
                    Jilin's entries made prior to September 29, 2002 should be liquidated at
                    the cash-deposit rate."

Page 16:            The first sentence of the final paragraph should read: "The Court
                    retroactively granted the motion for injunctive relief to prohibit entries
                    made during the periods of administrative review, but before the contrary
                    court decision, from being liquidated at the higher rate."

August 24, 2004